GEORGE RUNYAN, PLAINTIFF IN ERROR, *vs.* THE LESSEE OF JOHN G. COSTER AND THOMAS K. MERCIEN, WHO SURVIVED JOHN HONE, DEFENDANT IN ERROR.

The legislature of the state of New York, on the 18th of April, 1823, incorporated "The New York and Schuylkill Coal Company." The act of incorporation was granted for the purpose of supplying the city of New York and its vicinity with coal ; and the company having, at great expense, secured, by purchase, valuable and extensive coal lands in Pennsylvania, the legislature of New York, to promote the supply of coal as fuel, granted the incorporation, with the usual powers of a body corporate, giving to it the powers to purchase and hold lands, to promote and attain the objects of the incorporation. The recitals in the act of incorporation show that this power was granted with special reference to the purchase of lands in the state of Pennsylvania. The right to hold the lands so purchased depends on the assent or permission, express or implied, of the state of Pennsylvania.

The policy of the state of Pennsylvania, on the subject of holding lands in the state by corporations, is clearly indicated by the act of the legislature of Pennsylvania, of April 6, 1833. Lands held by corporations of the state, or of any other state, without license from the commonwealth of Pennsylvania, are subject to forfeiture to the commonwealth. But every such corporation, its foeffee or foeffees, hold and retain the same, to be divested or dispossessed by the commonwealth, by due course of law. The plain interpretation of this statute is, that until the claim to a forfeiture is asserted by the state, the land is held subject to be divested by due course of law, instituted by the commonwealth alone, and for its own use.

The Supreme Court of Pennsylvania having decided that a corporation has, in that state, a right to purchase, hold, and convey land, until some act is done by the government, according to its own laws, to vest the estate in itself; the estate may remain in a corporation so purchasing or holding lands : but such estate is defeasible by the commonwealth. This being the law of Pennsylvania, it must govern in a case where land in Pennsylvania had been purchased by a corporation created by the legislature of New York, for the purpose of supplying coal from Pennsylvania to the city of New York.

The case of Fairfax *vs.* Hunter, 7 Cranch, 621, cited with approbation.

In the case of the Bank of Augusta *vs.* Earle, 13 Peters, 584, and in various other cases decided in the Supreme Court, a corporation is considered an artificial being, existing only in contemplation of law ; and being a mere creature of law, it possesses only those properties which the charter of its creation confers upon it, either expressly, or as incidental to its very existence. Corporations created by statute must depend for their powers, and the mode of exercising them, upon the true construction of the statute.

A corporation can have no legal existence out of the sovereignty by which it is created ; as it exists only in contemplation of law, and by force of the law : and when that law ceases to operate, and is no longer obligatory, the corporation can have no existence. It must dwell in the place of its creation, and cannot migrate to another sovereignty. But although it may live and have its being in that state only, yet it does not follow that its existence there will not be recognised in other places,; and its residence in one state creates no insuperable objection to its power of contracting in another. The corporation must show that the law of its creation gave it authority to make such contracts. Yet, as in the case of a natural person, it is not necessary that it should actually exist in the sovereignty in which the contract is made. It is sufficient that its existence, as an artificial person in the state of its creation, is acknowledged and recognised by the state or nation where the dealing takes place ; and that it is permitted by the laws of that place to exercise the powers with which it is endowed.

Every power which a corporation exercises in another state, depends for its validity upon the laws of the sovereignty in which it is exercised : and a corporation can make no valid contract, without the sanction, express or implied, of such sovereignty ; unless a case should be presented in which the right claimed by the corporation should appear to be secured by the Constitution of the United States.

IN error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

This was an action of ejectment, brought in the Circuit Court of the District of Pennsylvania, by the defendant in error, the lessee of John S. Coster and Thomas K. Mercien, citizens of New York, for the recovery of a tract of land in Norwegian township, Schuylkill county, Pennsylvania. The defendant in the Circuit Court was in possession of the land.

The title of the lessors of the plaintiff below was founded on a patent from the commonwealth of Pennsylvania, dated December 23, 1824, to Benjamin Pott, granting three hundred acres of land to him, in Schuylkill county; a survey of the land, and a deed executed on the 17th of March, 1830, by which the patentee conveyed the land to John G. Coster, John Hone, Moses Jaques, and Thomas K. Mercien, of the city of New York, trustees for the stockholders of the corporation known under the name of the New York and Schuylkill Coal Company, as well for such persons as were then stockholders, as for such persons as might afterwards become stockholders.

The New York and Schuylkill Coal Company was incorporated by the legislature of New York, on the 18th of April, 1823.

Moses Jaques, one of the trustees, by direction of the company, conveyed the right and interest in the land held by him under the deed from Benjamin Pott and wife, to the other trustees, on the same uses and trusts. The lessors of the plaintiff in the Circuit Court, survived John Hone.

The defendant below, without offering any evidence, insisted and prayed the Court to charge the jury that the plaintiff, upon the evidence, was not entitled to recover; but the Court gave the contrary direction.

The jury having given a verdict for the plaintiff below, in conformity with the directions of the Court, and a judgment having been entered on the same, the defendant prosecuted this writ of error.

The case was argued by Mr. C. J. Ingersoll, for the plaintiff in error; and by Mr. Budd, with whom was Mr. Sergeant, for the defendant.

Mr. Ingersoll, for the plaintiff in error, said, that the case of the United States Bank vs. Earle, 13 Peters, 587, rendered much argument unnecessary. From that case he gathered, 1. That corporations are local as well as artificial bodies; 2. With no powers but what charters create; 3. Especially no extra-territorial powers, but by comity; 4. That although Courts may award the comity of the state; 5. Yet it must not be contrary even to the policy or the interest of the state; still less its law, written or common; 6. That corporations may act extra-territorially, by agents. Whether his was

the burden of disproving the comity, might be questioned; but he assumed it so far, to show the general rule of Pennsylvania: if the defendant appeals to an exception, let him show it.

The law, as settled in 13 Peters, turns on personalty. This is a case of reality; and all legislation is jealous, and jurisprudence exclusive, as to land. Story's Conflict of Laws, 363. Jackson *vs.* Ingraham, 4 Johns. 182. United States *vs.* Crosby, 7 Cranch, 115. Beatty *vs.* Knowler, 4 Peters, 168. The law of the state of Pennsylvania is deeply imbued with this principle; even in cases in which corporate powers are not involved. Williams *vs.* Mann, 6 Watts, 278.

By universal law, title to land begins with the government of its locality; and all tenures depend on it. Not only title, but disposal. In Pennsylvania, the English mortmain acts are in full force. 3 Bin. 626. 2 Pennsylvania Black. 40. The case of the Methodist Church, 1 Watts, 218. By recent act of assembly, these mortmain exclusions are reinforced. Acts of 6th April, 1833.

Thus the general rule is shown; and the question is driven to an exception. It has been adjudged in Pennsylvania, that corporations may take, though they cannot hold. Leasure *vs.* Hillegas, 7 Sergeant and Rawle, 313. But this case does not bind as a judgment on the case in argument, because the former was a case of domestic, not foreign corporation. The argument of that case is not to be a judgment to bind this; and that argument is wrong, for by common law, corporations may not take. To do so, is not of their nature, as asserted by Chief Justice Tilghman. 1 Blackstone's Com. 475. Co. Lit. 40. Indeed, the English mortmain acts are but declaratory of the common law. Ang. and Am. on Corpo. 80. All law, the original Roman, the English, and the American, require that bodies of land shall not be held in mortmain. 2 Kent. Com. 269—283. Nor is mortmain confined to superstitious or religious tenure, but all holding by any body. Such is the statute 7 Ed. 1 ch. 2., A. D. 1279, enlarging Magna Charta of 1217. See Highmore's History of Mortmain, and Reese's Cyclopædia. The law of mortmain forbids all holding of lands by artificial bodies. And to talk of English common law before 1279, is to recur to ages when we cannot ascertain what law was. 1 Reeve's History of English Law, ch. 5, p. 229.

Nor is English common law the common law of Pennsylvania; but the English law adopted as it was adapted. Carter *vs.* Bladen, 2 Bin. 484. Judge Read, in his Pennsylvania Blackstone, 1 vol. 261, and 2 vol. 40, is explicit, that there is no common law in that state, but as adopted and modified; and no corporation, but as chartered; no common law corporation whatever.

Moreover, there is no analogy, as supposed, between the coporative capacity and that of aliens, to take land and hold till ousted: because aliens are presumed to be capable till the contrary is shown. Gouverneur *vs.* Robertson, 11 Wheat. 356.

The act of incorporation of this company, is thoroughly New

York. A law of New York, session 46, ch. 184, p. 217, authorized it to hold five hundred thousand dollars worth of land in Pennsylvania, for the benefit of the city of New York; a sum that would buy a county, perhaps a state. Such act is void; not merely voidable : and void, whether the hold it gives over land in Pennsylvania be conferred on a body corporate, or on an individual.

Mr. Budd, for the defendants in error, contended, that if their title were directly in a corporation, not authorized to hold lands in Pennsylvania; still the position of the plaintiff is untenable, because the requisitions of the law to divest a title of that description, have not been complied with. Even under the statutes of mortmain, a corporation can take, although it cannot hold land as against the state. The corporation acquires, and may convey "a fee simple, defeasible by the commonwealth" alone; and until an escheat be regularly effected, it possesses all the rights and remedies incident to ownership. The right on the part of the state to enter, does not exist until office found. Leasure *vs.* Hillegas, 7 Sergeant and Rawle, 313. Baird *vs.* The Bank of Washington, 11 Sergeant and Rawle, 418. In both of these decisions, the case of an alien is considered as analogous to that of a corporation; and the doctrine in Fairfax *vs.* Hunter's lessee, 7 Cranch, 618, is adopted. There is no interval between the grant to the corporation, and the completion of the escheat, in which a trespasser can intrude. The plaintiff is really adverse to the state; and his success here would impair its rights, if any exist, which for the purpose of the present occasion he professes to vindicate. If the title be void, as is contended, then it never vested in the corporation, nor in trustees for the use of the corporation; consequently, the right of escheat cannot exist. It is therefore essential that the state should be able to trace the title to the corporation. Possession by the corporation is also important for the purpose of the escheat; for how can it be effected, when the person in possession does not claim under a corporation?

The right of possession being in the corporation, the right to sue to recover it, must also exist. In Leasure *vs.* Hillegas, the plaintiff was alienee of the corporation, and his right to sue was sustained. The right to sue is essential to the protection of all other rights. The doctrine, that the rights of a corporation to sue out of the place of its locality, arises from comity, and cannot exist in opposition to the laws of the state in which the suit is instituted, is inapplicable to the present case; for there is in Pennsylvania no such prohibition; and the escheat laws evidently admit the existence of rights in corporations, over lands which they are not licensed to hold; which Courts will aid them to enforce as against strangers. No authority has been adduced to sustain that distinction between domestic and foreign corporations. Remington *vs.* The Methodist Church, 1 Watts, 218, is a construction of the act of Assembly of 1730, relating exclusively to religious societies; and the case in 6 Watts,

L 2

280, refers to the exercise of judicial authority, and not to the voluntary appointment of trustees.

The act of Assembly of the 6th of April, 1833, which has been relied upon by the opposite counsel, prescribes a mode of proceeding which must be pursued before any argument derived from it can be sustained. It makes no distinction between domestic and foreign corporations. The right of a corporation to hold and retain the land subject to be divested or dispossessed at any time by the commonwealth, according to due course of law, is conceded by the preamble. Her title is to be established, and her right authenticated by "solemn matter of record," which is the only evidence of the right of the state. Even after the inquisition directed by the first and the fifth sections, no power exists in any officer of the state to declare the land forfeited; but the proceedings are to be reported to the legislature. It is consistent with the spirit of the act, to suppose, that as the corporate franchise, and not the corporators, was the object of hostility, no course detrimental to the latter would be pursued; but only such measures operating on the officers of the company as would prevent future attempts to exercise corporate authority in the state. The second section contains a release, which the defendants in error, if they were at any time within the prohibition of the law, would claim the benefit of before the inquest. The place and form of the trial, and the officer to conduct it, are prescribed; and it is incompetent for the plaintiff in error to make a different selection. A reward to informers is prohibited, and it is made the duty of a public officer to collect the evidence, thereby excluding the interference of strangers. But if the act were adverse to the defendants, as their title was acquired prior to its passage, it should not be construed as having a retrospective operation to their injury

But the disability of corporations is not in the present suit a consideration of the great importance which has been ascribed to it; as the defendants in error are trustees, and hold the legal title, which is all that is requisite in the action of ejectment. 9 Johns. Rep. 60. It is of no importance in a controversy with a stranger, for whom they hold. But it is said, that the trust is void. If it be so, what becomes of the legal estate? It cannot revert to the grantor, for he has received a valuable consideration for it. If there be a trust resulting by implication of law, would it not be for those who paid the purchase money? Or if the trust be void, would not the trustees hold the land discharged of the trust?—a doctrine which is sanctioned by the case of the Attorney General *vs.* Sir George Sands, Hard. 495. 4 Kent's Com. 426. In either event the title of the defendants in error would be unassailable. In the case of an alien, it has been determined, "that the king cannot be entitled on inquisition; for the estate in law is in the trustee, not in the alien, but he must sue in Chancery to have the trust executed." 1 Comyn's Digest, 559. The commonwealth, therefore, could not acquire title until the legal estate had vested in the corporation

The plaintiff in error had no claim to the consideration of a Court of Equity, but that defect in his case cannot aid him in a Court of law. He cannot ask the Court to look beyond the legal title, that he may discover and be assisted by a weakness in the trust, the investigation of which is foreign to the purpose of the action of ejectment. The argument that the trust is void and extinguished, if correct, would, in the present action at least, leave the legal estate unaffected; and in any other proceeding the defendants in error are prepared to show such a conformity to the laws of Pennsylvania, as will be amply sufficient for their protection. That a mode exists, or can be devised, by which a trust for a corporation shall not protect the estate from forfeiture may be true; but in the prosecution of the remedy, that "due course of law," alluded to in the preamble to the act of Assembly of the 6th of April, 1833, should never be lost sight of. The right to sue in the federal Courts, does not depend on the capability of the cestui que trust, as has been repeatedly determined. 4 Cranch, 306. 8 Wheat. 642.

The trust in this case was not, as is alleged, created by a corporation, but by Benjamin Pott, the grantor. If it had been, there is nothing in the charter of the New York and Schuylkill Coal Company, which prohibits the creation of trusts; much less is there any prohibition of a contract with trustees holding lands in Pennsylvania, to enable the company more efficiently to prosecute the business for which it was organized.

Having considered the insufficiency of the case of the plaintiff in error, even if the title were in a corporation not licensed to hold lands in Pennsylvania, and also the further obstacle arising from the trust, it will now be proper to inquire into the actual character of the title of the defendants in error. It is denied that it is a trust for a corporation. If there be any doubt upon this point, it should operate in favour of the defendants; for the Court, adopting the usual mode of construction, will give a strict construction to statutes so highly penal as the statutes of mortmain, and the act of Assembly of the 6th of April, 1833. In resisting an attempt to cause a forfeiture, our conveyance is entitled to the most favourable construction. The title is in trust for the "individual stockholders" of the company, which is a description of persons sufficiently precise. There is no title given to the corporation. The corporation has no control over the property, other than that of ordering sales; an authority designed to aid the execution of the trust, and protect it from abuse. Its officers could neither cut the timber, nor break the soil. It can exercise no authority over the rents and profits. If the charter were to be repealed by the legislature of New York, according to the power reserved in it, or from any other cause it were to cease to exist, the title would not be affected by it. The assistance of the directors in effecting sales could be dispensed with; and thus the only connection between the trustees and the corporation be terminated. The latter clause of the trust refers to the charter, not for the purpose of deriving authority from it, but merely to de

signate and ascertain the correct organization of the body which is to exercise the authority given by the deed of trust. As the power to sell is derived from the deed of trust, and not from the charter; the phrase "in virtue of their charter," can have no other meaning. It is an authority designed to save the trust from abuse. It might be exercised by a stranger. Suppose a trust for an infant, and the trustee is authorized to sell, as directed of a corporation or an alien, would the title be in the corporation or alien? If the authority to superintend sales had been given to any other corporation, would the title have been in it, and not in the trustees, for the use of the individual stockholders of the New York and Schuylkill Coal Company? How can it be said that the corporation holds the land, or that it is held in trust for it, when the trust is expressly declared to be for the individual stockholders; and the connection with the corporation is limited to an authority to order sales, the existence of which power, as it may be exercised by the stockholders, is not essential to the execution of the trust. But it is averred that the trust is illegal and void, although it be for an unincorporated association; but no authority has been referred to which sustains the position: Remington vs. The Methodist Church, as has already been stated, relating exclusively to religious associations. The defendants do not claim to derive title under any statute of New York, or any corporation chartered by that state; but from a conveyance executed in conformity to the laws of Pennsylvania.

Mr. Justice THOMPSON delivered the opinion of the Court.

This case comes up on a writ of error from the Circuit Court of the United States for the Eastern District of Pennsylvania.

It is an action of ejectment brought to recover possession of about two hundred and thirteen acres of land, in the township of Norwegian, in the county of Schuylkill. Upon the trial, the lessors of the plaintiff gave in evidence a warrant issued by the secretary of the land office, in the commonwealth of Pennsylvania, authorizing a survey for Benjamin Pott, for the quantity of land applied for by him, bearing date the 23d of December, in the year 1824. And also a survey of the land, containing two hundred and thirteen acres and fifteen perches, accepted on the 11th August, 1825, embracing the land in controversy; together with a deed from Benjamin Pott and his wife, to John G. Coster, John Hone, Moses Jaques, and Thomas K. Mercien, for the same premises, bearing date the 17th of March, in the year 1830, conveying to them in fee simple the said lands, upon certain trusts therein specified, to the sole use and behoof of the several individual stockholders of the corporation known under the name, style, and title of the New York and Schuylkill Coal Company. And further gave in evidence, a deed from Moses Jaques, one of the trustees, to John G. Coster and Thomas Mercien, the two surviving trustees named in the last mentioned deed, bearing date the 25th of July, 1837, releasing and conveying to his said co-trustees, in fee simple, all his right, title, interest, and trust, in law

or equity, in the premises, to have and to hold the said tract of land to them, their heirs and assigns forever; to such uses and upon such trusts as are mentioned and contained in said deed. The death of John Hone, one of the trustees named in the first mentioned deed, having been proved, and that the defendant, John Runyan, was in possession of the premises when the suit was commenced, the plaintiff rested the cause : and thereupon the defendant, without offering any evidence, insisted and prayed the Court to charge the jury that upon this evidence the plaintiff was not entitled to recover. The Court refused to give such charge; but, on the contrary, directed the jury that the plaintiff was entitled to recover: whereupon the defendant tendered a bill of exceptions.

The question presented by this bill of exceptions is, whether the lessors of the plaintiff, being trustees of a corporation in the state of New York, could, under the laws of the state of Pennsylvania, take the estate conveyed by Benjamin Pott and his wife to the trustees of that incorporation. If the lessors of the plaintiff had the legal estate in the premises in question vested in them, their right to recover followed as matter of course; nothing having been shown on the part of the defendant to impugn that right.

The rights and powers of a corporation were very fully examined and illustrated by this Court, at the last term, in the case of the Bank of Augusta vs. Earle, 13 Peters, 584. In which case, and in various other cases decided in this Court, a corporation is considered an artificial being, existing only in contemplation of law; and being a mere creature of the law, it possesses only those properties which the charter of its creation confers upon it, either expressly, or as incidental to its very existence. That corporations created by statute must depend for their powers and the mode of exercising them, upon the true construction of the statute. A corporation can have no legal existence out of the sovereignty by which it is created; as it exists only in contemplation of law, and by force of the law: and that when that law ceases to operate, and is no longer obligatory, the corporation can have no existence. It must dwell in the place of its creation; and cannot migrate to another sovereignty. But, although it must live and have its being in that state only, yet it does not follow that its existence there will not be recognised in other places; and its residence in one state creates no insuperable objection to its power of contracting in another. The corporation must show that the law of its creation gave it authority to make such contracts. Yet, as in the case of a natural person, it is not necessary that it should actually exist in the sovereignty in which the contract is made. It is sufficient that its existence as an artificial person in the state of its creation, is acknowledged and recognised by the state or nation where the dealing takes place; and that it is permitted by the laws of that place to exercise there the powers with which it is endowed. Every power, however, which a corporation exercises in another state, depends for its validity upon the laws of the sovereignty in which it is exercised; and a corporation can make no valid contract,

without the sanction, express or implied, of such sovereignty: unless a case should be presented in which the right claimed by the corporation should appear to be secured by the Constitution of the United States.

Under this general view of the rights and powers of a corporation, and the limitation upon the exercise of such powers in places out of the jurisdiction where granted; the application of them to the case now before the Court is the next subject of inquiry.

The powers vested in the trustees of the New York and Schuylkill Coal Company, and the right to take the estate, and execute the trusts vested in them by the deed from Benjamin Pott and his wife, will depend upon the act of incorporation by the legislature of New York, of the 18th of April, 1823. The recital in that act shows that the incorporation was granted for the purpose of supplying the city of New York and its vicinity with coal: and that the company had, at great expense, secured the purchase of valuable and extensive coal lands in the state of Pennsylvania; and that the legislature being disposed to encourage the developement of our internal resources, and being sensible of the importance of a supply of fuel to the city, and for the better security of the persons investing their money in an undertaking so extensive, and requiring so large a capital, granted the incorporation, with the usual powers of a body corporate; and giving to the corporation the right to purchase, hold, and convey any estate, real or personal, for the use of the said corporation; provided, that the real estate or their interest therein, so to be holden, shall be such only as shall be requisite to promote and obtain the objects of the incorporation. The right to purchase and hold real estate is, therefore, expressly vested in this corporation; and the recitals show that this power was granted with special reference to the purchase of lands in the state of Pennsylvania. And the deeds given in evidence show, that the legal estate in the lands in question is vested in the lessors of the plaintiff, in trust for the stockholders; and the trusts therein declared, are for the purposes of carrying into execution the great and leading object of the corporation. The capacity, therefore, of the lessors of the plaintiff, to take the lands in question for the use of the stockholders of this incorporation is very clearly shown. And the right to hold the lands must depend upon the assent or permission, either express or implied, of the state of Pennsylvania.

The policy of that state upon this subject is clearly indicated by the act of the 6th of April, 1833; relative to the escheat of lands held by corporations without the license of the commonwealth. It recites, that whereas it is contrary to the laws and policy of the state for any corporation to prevent or impede the circulation of landed property from man to man, without the license of the commonwealth; and no corporation, either of this state or of any other state, though lawfully incorporated, can in any case purchase lands within this state, without incurring the forfeiture of said lands to the commonwealth, unless such purchase be sanctioned and authorized

by an act of the legislature; but every such corporation, its feoffer or feoffers, hold and retain the same, subject to be divested or dispossessed at any time by the commonwealth, according to due course of law.

The plain and obvious policy here indicated is, that although corporations, either in that or any other state, (no distinction being made in this respect,) may purchase lands within the state of Pennsylvania, yet they shall be held subject to be divested by forfeiture to the commonwealth. And the act then points out the mode and manner in which proceedings shall be instituted and carried on to enforce the forfeiture : necessarily implying, that until such claim to a forfeiture is asserted by the state, the land is held subject to be divested by due course of law, instituted by the commonwealth alone : and this conclusion is fortified by the provision in the fourth section of the act, that the rights of common informers in relation to escheats, shall not apply to proceedings under this statute. But it is made the exclusive duty of the escheator to prosecute the right of the commonwealth to such lands.

The doctrine of the Supreme Court of Pennsylvania, in the case of Leasure vs. Hillegas, 7 Binney, 313, is directly applicable to this case. The question then before the Court was as to the right of the Bank of North America to purchase, hold, and convey the lands in question : and the Court took the distinction between the right to purchase and the right to hold lands, declaring them to be very different in their consequences : and that the right of a corporation in this respect was like an alien, who has power to take, but not to hold lands : and that although the land thus held by an alien may be subject to forfeiture after office found, yet until some act is done by the government, according to its own laws, to vest the estate in itself, it remains in the alien, who may convey it to a purchaser; but he can convey no estate which is not defeasible by the commonwealth. Such being the law of Pennsylvania, it must govern in this case. But the principle has received the sanction of this Court, in the case of Fairfax vs. Hunter, 7 Cranch, 621 ; where it is said, that it is incontrovertibly settled upon the fullest authority, that the title acquired by an alien, by purchase, is not divested until office found.

We do not enter at all into an examination of the question whether any, and if any, which of the English statutes of mortmain are in force in Pennsylvania; but place our decision of this case entirely upon the act of that state, of the 6th of April, 1833, and the doctrine of the Supreme Court in the case of Leasure vs. Hillegas; which we think clearly establish the right of the lessors of the plaintiff to hold the premises in question, until some act shall be done by the commonwealth of Pennsylvania, according to its own laws, to divest that right, and to vest the estate in itself. The legal estate is accordingly in the lessors of the plaintiff, and the defendant cannot set up any right of forfeiture which the state of Pennsylvania may

assert. That is a matter which rests entirely in the discretion of that state.

The judgment of the Circuit Court is accordingly affirmed, with costs.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the Eastern District of Pennsylvania, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this Court, that the judgment of the said Circuit Court in this cause be, and the same is hereby, affirmed with costs.