In the matter of EDWARD B. LEEFE and CAROLINE M.
his wife.

---

A grantor gave a leasehold house to a trustee, to receive rents and apply them
towards the support of H. C. "And after the death of H. C., I give, grant
and convey the aforesaid house to my natural daughter M. B. M. her heirs
and assigns": Here the daughter got a vested remainder assignable and
descendable; and on her making a marriage settlement (her future husband
joining) whereby the property was secured to the survivor of them and the
husband survived: *Held,* that he was entitled under the settlement and was
not left to his marital rights.
Husband's rights in a wife's property stated by the court.
*It would seem,* that the provision requiring aliens to take incipient measures
and to file affidavit before holding lands (1 R. S. 720) does not abolish the
common law right of an alien to take by purchase.
The government alone can take advantage of an alien's disability to hold
lands.
An officer of the court who, under its decree, holds a suitor's property by con-
veyance, has no right thereunder to raise objections to the suitor's title; and,
therefore, has no business with a question of his alienism.

---

THIS case will be best understood from the petition of
Edward B. Leefe and Caroline M. his wife, which was pre-
sented to the chancellor and referred by his order to the
vice-chancellor to be heard.

The petition stated, that, as they were informed and be-
lieved, one Thomas Marston, late of the city of New York
but now deceased, being possessed of an unexpired term of
fifty years in the premises hereinafter mentioned by virtue
of a certain indenture of lease made to him by the vestry of
the episcopal church of St. Peters in Westchester county,
state of New York, did, on the twenty-sixth day of February
1811, execute and deliver a certain indenture purporting to
convey the same in the words and figures following, viz :—

"Know all men by these presents that I, Thomas Mars-
ton, for considerations me moving, have given, granted and
confirmed and by these presents do give, grant and confirm
unto Francis B. Winthrop my house now building the cor-
ner of Reade and Chapel streets in the city of New York, free
from all ground rent that is now due or hereafter may be-

*April 4,*
1844.

*Estate.
Remain-
der.
Leasehold.
Husband
and wife.
Alien.
Officer of
the Court.*

come due upon said premises during said term for which I hold the same, to receive the rents issues and profits thereof and every part thereof to be applied by him for the support and maintenance of Mrs. Hannah Currie for and during her natural life, upon the express condition that the same shall not be sold during the natural life of the said Hannah Currie but shall be held for the purposes aforesaid : and after the death of the said Hannah Currie I give grant and convey the aforesaid house the corner of Reade and Chapel streets to my natural daughter Mary Bunn Marston her heirs and assigns.    And I do hereby give to the said Mrs. Hannah Currie so much of my furniture and household goods as is now in my house as she shall think sufficient towards furnishing a house in a genteel style.   And as to all the residue and remainder of my said furniture and household goods I do hereby convey and give to my said natural daughter Mary Bunn Marston.   In witness whereof I have hereunto set my hand and seal this 26th day of February 1811.

"THOMAS MARSTON. [L. S.]
"Sealed and delivered in the presence of
"ELSIE YOUNG,
"PHILIP BRASHER."

That the said Thomas Marston died on or about the 11th day of January 1814, and that the said Francis Bayard Winthrop having declined acting as trustee under said deed a bill of complaint was duly filed in this honorable court on the 7th day of March 1814 by William Bunn and Hannah Currie wife of John Currie by the said William Bunn her next friend and Mary Bunn Marston the natural daughter of Thomas Marston late of the city of New York then deceased—an infant under the age of twenty-one years also by the said William Bunn her next friend against Francis Bayard Winthrop, Charles W. Taylor and Cornelia his wife, John S. Winthrop, Francis Bayard Winthrop Junior, Henry M. Bearse and Charlotte his wife, Philip Brasher and Cornelia his wife, Elsie Young, Jacob R. Vanderveer and Cornelia his wife, Ann Marston Shaw, John Currie and William Bayard, which said bill charges, among other things, that Mary Bunn Marston is the natural child of the said Thomas Marston and was then still an infant—that Hannah Currie

1844.

IN THE MAT-
TER OF LEEFE.

for about eighteen years previous to the death of the said Thomas Marston resided in his house and took charge and management of his family and domestic concerns, he being far advanced in years exceeding the age of seventy-four years; that induced as well by the sense of gratitude for the long and faithful services of the said Hannah Currie who had devoted so long a portion of the best years of her life to his service and was wholly destitute of property as also by a sense of the moral obligation he was under to provide for the maintenance of the said Mary Bunn Marston, who was entirely dependant upon his bounty for the means of maintenance, the said Thomas Marston repeatedly and uniformly declared his intention to make for them respectively a competent provision which should place them beyond the reach of want. That in conformity with and in order to carry into effect these views and intentions the said Thomas Marston, on or about the 26th day of February 1811, made and executed the said instrument in writing hereinbefore and in said bill of complaint set forth—that the said instrument in writing was duly signed, sealed and delivered by the said Thomas Marston in the presence of Elsie Young and Philip Brasher who subscribed the same as witnesses thereto and that after the execution thereof in manner aforesaid the same was enclosed by him in and with his last will and testament under the same envelope, in which situation it continued and remained until after the death of the said Thomas Marston; and on the opening of the said last will and testament was found enclosed by the said Francis Bayard Winthrop the executor aforesaid by whom the same was delivered to the said Hannah Currie. That the said Thomas Marston departed this life on or about the eleventh day of January 1814 leaving a last will and testament and the said instrument in writing in the said bill of complaint and hereinbefore set forth in full force and virtue unrevoked, unrecalled and unaltered, except as in the said bill is stated; that since his death, Francis Bayard Winthrop, one of the executors, had taken upon himself the burthen of the execution of the said last will and testament in the said bill of complaint set forth; that the said Francis Bayard Winthrop, the trustee named in the said instrument bearing date the 26th day of Febru-

ary 1811, would not accept the trust therein contained or take upon himself the burthen of the execution thereof. The said bill of complaint prayed, among other things, that the said Francis Bayard Winthrop might be decreed forthwith to elect definitively either to accept or decline the execution of such trust, and in case he should decline, that the said court, through one of its officers or by some other person or persons, would cause such trust to be executed and that the said Francis Bayard Winthrop in case he should decline to execute such trust should bring into court or deliver to such person or persons as the court should appoint the deed or indenture of demise of the said term of years mentioned in the said instrument and all other muniments or papers touching the same; and that the said Francis Bayard Winthrop or he and the other legatees and devisees under the said will of the said Thomas Marston or some of them might be decreed to pay and keep down the ground rent as the same should, from time to time, become due and payable pursuant to the provisions and reservations contained in the said demise; and that the said court would be pleased to decree and adjudge valid and confirm the said instrument executed by the said Thomas Marston bearing date the twenty-sixth day of February 1811 in the said bill of complaint recited either as a grant or conveyance or else as a testamentary disposition in the nature of a codicil to the said last will and testament of the said Thomas Marston or else adjudge and decree in what way the same was to be deemed to operate and enure and what estate and rights were conveyed passed or vested thereby. And that the said John Currie should be decreed to suffer and permit the said Hannah Currie to enjoy and dispose of the said property and the rents, issues and profits thereof free from any control, interruption or molestation on his part.

And further that, as they were informed and believed, answers were duly put in to said bill of complaint by the several defendants therein mentioned and a final decree was then duly made and enrolled in the words and figures following, that is to say:

" At a court of chancery held for the state of New York at the city of Albany the sixteenth day of January, 1815.

*Present*—The Honorable James Kent, Esquire, Chancellor.

William Bunn, Hannah Currie wife of John Currie by the said William Bunn her next friend and Mary Bunn Marston, an infant, by the said William Bunn her next friend,

*vs.*

Francis Bayard Winthrop, William Bayard, Charles W. Taylor and Cornelia his wife, John Hill Winthrop, Francis Bayard Winthrop Junior, Henry M. Bearse and Charlotte his wife, Philip Brasher and Cornelia his wife, Elsie Young, Jacob R. Vanderveer and Cornelia his wife, Ann Marston Shaw and John Currie.

This cause, by the consent of the parties having been submitted to his honor the chancellor upon bill and answer and a case agreed upon and signed by the solicitors for the respective parties containing certain admissions, whereupon and upon debate of the matter and hearing what could be alleged by the counsel for both parties this court thinks fit and so order and decree ; accordingly it is ordered adjudged and decreed by the court that the defendant Francis Bayard Winthrop, the sole acting executor of the last will and testament of Thomas Marston, deceased, named in the bill of complaint of the said complainants, do permit and allow the complainant, Hannah Currie, to elect and take and she is hereby declared entitled to elect and take, in the presence of one of the masters of this court, such portion of the furniture and household goods (the plate being included) possessed by the said Thomas Marston on the twenty-sixth day of February in the year of our Lord one thousand eight hundred and eleven as she shall, with the approbation of such master, deem sufficient towards furnishing a house in a genteel style, due regard being had to her circumstances and degree in life—and that upon such election being made and approved by said master in writing the said Francis Bayard Winthrop do forthwith deliver to the said Hannah Currie or her assigns the said portion of the said household furniture (plate being included) so elected by her and do deliver

" over the residue of the said furniture and household goods (plate being included) to the guardian of the complainant Mary Bunn Marston to be kept and preserved for her use ; and that—for the purpose of making the election aforesaid—the said Francis Bayard Winthrop do show the said furniture and household goods (plate included) at such reasonable times and places as the said master shall for that purpose appoint.

And it is hereby ordered, adjudged and decreed that the said Francis Bayard Winthrop do, within ten days after service of a copy of this decree, bring into this court and deposit with the assistant register thereof in the city of New York the lease of the lot of ground at corner of Reade and Chapel streets in the city of New York, alluded to in the deed executed by Thomas Marston, bearing date the twenty-sixth day of February one thousand eight hundred and eleven, set forth in the complainant's bill of complaint and all other muniments and papers if any relating thereto in his power or possession by whomsoever the same may be executed and whatsoever may be the description of the said premises; and do execute and deliver to the said assistant register some proper release and assignment of all his right and interest in the said house and lot of ground, to be prepared under the direction of one of the masters of this court, to be held by the said assistant register and his successors in office to the uses and upon the trusts contained in the said deed executed by the said Thomas Marston bearing date the twenty-sixth day of February one thousand eight hundred and eleven.

And it is further ordered, adjudged and decreed that so much of the estate of the said Thomas Marston, at the time of his death, as shall be necessary for that purpose, stand and be charged with the payment of all the ground-rent due or to become due during the continuance of the said demise and remain and continue in the hands of the said Francis Bayard Winthrop, acting as executor as aforesaid of the said Thomas Marston deceased and those who may legally succeed to the administration of the said real estate ; and that the said Francis Bayard Winthrop and his legal representatives in the administration of the said estate do pay off and keep down as well such ground rent as is now in arrear

as also such as shall hereafter become due and payable during the continuance of the said demise.

The petition further showed that the said Francis B. Winthrop, intending to obey said decree, executed a certain indenture in the words following, viz: "This indenture made the third day of March in the year of our Lord one thousand eight hundred and fifteen. Between Francis B. Winthrop, executor of the last will and testament of Thomas Marston, late of the city of New York, gentleman, deceased, of the first part and Isaac L. Kip, assistant register of the court of chancery, of the second part. Whereas the said Thomas Marston in his lifetime and at the time of his death, being possessed of a certain leasehold estate of and in a certain dwelling house and lot of ground situate, lying and being in the first ward of the city of New York at the corner of Reade and Chapel streets, did, in and by a certain instrument or deed poll bearing date the twenty-sixth day of February in the year of our Lord one thousand eight hundred and eleven, give, grant and confirm the said dwelling house and lot of ground to the said party to these presents of the first part, for the remainder of the term for which the said Thomas Marston held the same, in trust to receive and apply the rents and profits thereof to the support and maintenance of Hannah Currie during her natural life, and after her decease to convey the said house and lot to his natural daughter the said Mary Bunn Marston. And whereas the said party of the first part having refused to execute the said trust, the said Hannah Currie (she being a feme covert) and the said Mary Bunn Marston (she being an infant under the age of twenty-one years) by their next friend William Bunn filed their bill in the court of chancery for the purpose of obtaining the effect of the said instrument; and such proceedings were thereupon had that on the sixteenth day of January eighteen hundred and fifteen, it was adjudged and decreed, among other things by this court, that the said party of the first part should execute and deliver to the said assistant register some proper release and assignment of all his right and interest in the said house and lot of ground, to be prepared under the direction of one of the masters of the said court—to be held by the said assistant register and his suc-

cessors in office to the uses and upon the trusts contained in the said deed poll. Now, therefore, this indenture witnesseth that the said party of the first part, in obedience to the said decree and in consideration of the sum of one dollar to him in hand paid by the said party of the second part, at or before the sealing and delivering of these presents, the receipt whereof is hereby acknowledged, hath assigned, remised, released and forever quit-claimed, and by these presents doth assign, remise, release and forever quit-claim unto the said party of the second part and his successors in office, all his the said party of the first part's right, title, and interest of in and to the said dwelling house and lot of ground, with the appurtenances. To have and to hold to the said party of the second part and his successors in office to the uses and upon the trusts declared in and by the said deed poll. In witness whereof the parties to these presents have hereunto interchangeably set their hands and seals the day and year first above written. Signed,

FRANCIS BAYARD WINTHROP. [L. S.]
Executor to the estate of Thomas Marston dec'd.
Sealed and delivered in presence of
JOHN S. WINTHROP.

The petition further showed that Mary Bunn Marston above mentioned, in the month of November 1827, intermarried with Augustus Krucher of the city of Paris, and died in Paris without issue some time in the winter of 1828 leaving her said husband her surviving. That said Krucher being a French subject, said intermarriage was celebrated before the consul-general of France in the city of New York, according to and under the provisions of the code civil of France, and that prior thereto an ante-nuptial contract was duly executed between them and is now duly registered in the chancery of said consulate in the city of New York. That by the provisions of said marriage settlement all the property, real and personal, of the said Mary, the wife of the said Augustus, became vested in him absolutely on her death as survivor. The petition further alleged that under the said deed or indenture of the said Thomas Marston the interest of the said Mary Bunn Marston was fully vested in her on the execution of said deed—the enjoyment only being post-

poned until the death of the said Hannah Currie and that
upon the decease of the said Mary her title fully survived to
her said husband the said Augustus Krucher and became
perfect in him after the decease of the said Hannah.   That
the said Hannah Currie died in the month of January 1841.

The petition further showed that on the 8th June 1842,
the said Augustus Krucher, being a man of wealth and de-
sirous that the property of his said wife should go to some
one of her own relations, conveyed the said unexpired term
to the petitioner, the above named Caroline, a cousin of the
said Mary Bunn Marston, by a deed or indenture of that
date, now in the possession of the petitioners and ready to
be produced, as this honorable court might direct.   The pe-
titioner, therefore, insisted that, by reason of the premises,
they were entitled to a conveyance of said premises from
the said Hiram Walworth.

They further showed that at the time of the decease of the
said Hannah Currie, who being the aunt of the petitioner
the said Caroline and for a long time before, the petitioner
and her mother Matilda Nicoll, the sister of the said Han-
nah Currie, were in the occupancy of the said premises and
the said Hiram Walworth shortly thereafter commenced an
action of ejectment against them without the authority of
this court, as they were informed and believed, and upon the
strength of the strict legal title in him under the proceed-
ings aforesaid, had ejected them from the said premises:
the superior court, before which court said suit was pend-
ing, having decided in his favor on that ground alone.   The
petition further showed that since the said decision they
had requested the said Hiram Walworth to make a proper
conveyance of said premises to the petitioners and to sur-
render the possession thereof to them as the rightful pro-
prietors which he had refused and still refuses to do.

The petition, therefore, prayed that the said Hiram Wal-
worth, the said assistant register, might be directed to make
proper conveyance of the said premises and the said unex-
pired term to the petitioners or to the petitioner, the said
Caroline, in such form as the law might require and to ac-
count with the petitioners for all rents and profits of said
premises received by him since the death of the said Han-

nah Currie or for such other order in the premises for the promotion of justice and the preservation of the rights of the petitioners as might seem meet.

This petition was referred to a master to inquire and report as to the truth of statements and whether the petitioners were entitled to such transfer and conveyance as was prayed for; and the master was to give notice of his proceedings to Hiram Walworth, Esquire, the assistant register.

The case now came before the court on the petition and master's report, the latter embracing testimony which sustained the allegations and facts set forth in the former.

Mr. *Anthon,* for the petitioners, argued from the following points:

1. The conveyance from Thomas Marston to his daughter Mary Bunn Marston, of the unexpired term of years in the leasehold premises in question, to commence at the time of Hannah Currie's death, was a good lease to her *in futuro*: 4 Com. Dig. 86, a. g. and notes.

2. She had in her immediately *interesse termini* and had full and perfect right to grant it to another. Ib. p. 96, c. 14.

3. By the 8th article of the marriage contract between L. A. Krucher and Miss Marston, it is expressly agreed that by a *donatio inter vivos,* the survivor shall take all the property moveable and immoveable which may belong to the deceased on the day of his or her death. Mr. Krucher then became possessed of all the right of his wife in the chattel interest in question by survivorship.

4. L. A. Krucher, after the death of his wife, by indenture dated 8th June 1842, conveyed said unexpired term to Caroline Matilda Green, the wife of the petitioner Edw. B. Leefe. And she had entered and taken full possession of the premises and is the proper owner thereof.

5. Krucher was a citizen at the time of the marriage or at the time the title to the unexpired term vested in him and had, therefore, full power to convey: *Nolle* v. *Fenwick,* 4 Rand. 588. Facts and circumstances after long interval good proof of naturalization.

6. With regard to the acquisition of leasehold premises, it is of no moment whether the party acquiring the same is citi-

zen or alien; the right equally vests and is accompanied with full power to convey, until office found. The title of an alien friend to land purchased, is good against every body but the state; and his right can only be divested by office found : *McCreary* v. *Allender*, 4 Harris & McHenry, 409 ; Ib. 411 ; *Craig* v. *Leslie*, 3 Wheat. 589 ; *Jackson* v. *Adams*, 7 Wend. 367. And until the land is seized by the state, the alien has full dominion over it and may convey it to a purchaser or maintain an action to recover it : *Bradstret* v. *Supervisors, &c.* 13 Wend. 546 ; *Scalan* v. *Wright*, 13 Pick. 523.

7. The petitioners are, therefore, in every point of view, clearly entitled to a conveyance of the premises from the trustee, conceding such conveyance to be necessary for their title.

Mr. *M. Hoffman*, for the assistant register.

THE VICE-CHANCELLOR :—Although the legal title to the leasehold property in question is vested in the assistant register *ex officio*, yet, he can claim no beneficial interest or ownership in the property for himself. He is merely a trustee ; and during the life of Mrs. Currie she was *cestui que use* and enjoyed the property. At her death, it would have gone to Mary Bunn Marston, had she lived ; and the assistant register must have conveyed it to her absolutely and, thus, would have terminated the trust. Mary Bunn Marston had married, however, and died before her mother, Mrs. Currie, leaving no issue, but leaving her husband surviving.

To whom, then, did the property belong ? Did the gift lapse or fail for want of a person to take or did her surviving husband become entitled to the property ?

The remainder in the term or lease, after the life estate for Mrs. Currie was carved out of it, was clearly a vested remainder, vested in interest, although not in possession. As such, it was assignable, transmissible, descendible. The trust did not cover the gift to the daughter. By the original Marston deed, the gift was directly to her—not to a trustee for her. The language of the instrument is : "after the

*1844.*

IN THE MATTER OF LEEFE.

*April 22.*

death of Hannah Currie, I give, grant and convey the house, &c. to my natural daughter Mary Bunn Marston, her heirs and assigns." This was a gift *in presenti* and vested her with the title and estate at the same time that the gift to the mother took effect, although it was not to be enjoyed as a thing in possession of the daughter until the death of the mother : on this subject see 1 Roper on Legacies, 392, 394 and cases there cited.

If the daughter—dying, as she did, in the year one thousand eight hundred and eighteen—had died unmarried, it is certain that the property, being a chattel interest, would have gone to her personal representative, subject, of course, to her mother's use of it for life. But, having married, it is equally certain that the law gave it to her husband, unless, by the contract of marriage, the husband deprived himself of his marital right or, by being an alien, was prevented from taking. The ante-nuptial contract which, it appears, the parties entered into, could not deprive him of the property, except in the event of her surviving him, when it was still to have been her estate ; but, in the event which has happened, it became his property absolutely by survivorship. True, a husband, by marriage, acquires only a qualified right or interest in the outstanding personal property of his wife. If he does not reduce it into possession during her lifetime, he may be obliged to take out letters of administration as upon her estate, in order to recover it ; but when so recovered, the property will belong to him, subject to the payment of any debts of the wife contracted *dum sola*. And if he omits to administer and dies without obtaining the possession, then, the property will go to the wife's and not to the husband's representative and next of kin : Williams on Executors, 438, 439.

I am of opinion, however, that the right of property in this case, as between this husband and wife, is governed by the ante-nuptial contract made between them and not by the rules of the common law. They have regulated the devolution, as they were at liberty to do, by contract ; and have not left the husband to stand upon his strict legal marital right. According to the contract, the husband became entitled by survivorship. All her right, by that event,

passed to him by force of the contract and not by operation of law resulting merely from the marriage.

But, it is said, the husband was an alien and could not take and hold an interest in lands. The evidence fails to prove that he was ever naturalized, although he took an incipient step towards becoming a citizen. At common law, however, an alien may take real estate by purchase—not by descent or mere operation of law—and hold the same against every body, except the state; and if disseized or disposessed by any other than the government, he may maintain his action or writ of right : *Bradstreet* v. *Supervisors of Oneida*, 13 Wend. R. 546. There is one exception to an alien's taking by purchase, *i. e.* he cannot take by devise (a species of purchase) and which is now prohibited by statute : 2 R. S. 57, § 4. I find no other statutory prohibition to an alien's taking by purchase, unless, indeed, the proviso introduced into the act of 1825, enabling resident aliens to take and hold lands, provided they do certain things, was intended to prevent any alien from taking by conveyance as well as by descent or devise. That proviso is incorporated into the revised statutes, 1 R. S. 820, § 15, 16, 17 and the proviso alluded to forms § 17. It seems to me that the legislature could, hardly, have intended to abolish entirely the common law right to take by purchase—by inserting these provisions—or it would have been more clearly expressed.

But, suppose the § 17 produces a *disqualification to take* as well as to hold lands, unless the alien becomes a resident and files an affidavit of his intention always to reside in the United States and to become a citizen thereof. Who can take advantage of the disability so as to divest the alien or his grantee of the possession acquired under his purchase ? Most certainly none but the government. It is an affair of the government alone. A grant to an alien is good against the grantor and his heirs. So is a devise good against the heir of the devisor. The title passes out of the grantor or devisor by his own act; but, instead of vesting in the alien grantee or devisee absolutely, it reverts *ea instanti* to the state by escheat. This seems to be the

doctrine recognized by our supreme court in the recent case of *The People* v. *Conklin*, 2 Hill's R. 67.

It follows, from this view of the subject, that the assistant register of this court can have no right to interfere with or to question the title which was acquired by the husband of Mary Bunn Marston by purchase—for such it was—under their marriage contract, much less to disturb the possession of him and his grantee the present petitioner. Upon what ground, even at law, he could have been allowed to recover judgment in the action of ejectment spoken of in the petition, I am not informed. In equity he can have no such right. If the petitioners have not a valid title under the deed from the surviving husband of Mary Bunn Marston, by reason of his alienism, it is not for the officer of this court to interpose the objection and seek to dispossess them. The attorney-general is the person to act in behalf of the state; and the petitioners can only be called upon to defend their title and possession against the claim of the government. In the meantime, this court is bound to order the assistant register to desist from further proceedings against the property and to execute a release, if necessary, to quiet them in the possession against any claims he may suppose himself to have.