THE OMNIUM INVESTMENT COMPANY, LTD., v. THE NORTH AMERICAN TRUST COMPANY *et al.*

No. 12,573.   (68 Pac. 1089.)

SYLLABUS BY THE COURT.

1. FOREIGN CORPORATIONS—RIGHT TO SUE—*Fraudulent Conveyance — Alien Land Law of 1891.* The plaintiff was a foreign corporation and, as such, subject to the disabilities in the matter of holding title to real estate imposed by chapter 3 of the Laws of 1891, which provided that such corporation should not be capable of acquiring title to, or taking or holding, real estate,

directed that real estate so held should be forfeited to the state, made it the duty of the county attorney of the county where such real estate was situate to enforce such forfeiture by an action for that purpose brought in the name of the state, and required that, after the sale of the lands so forfeited and the payment of the costs of such action, the residue of the money realized should be paid to the persons entitled thereto. An agent of the plaintiff had wrongfully taken title to real estate in his own name, which should have been taken in the name of the plaintiff, and subsequently conveyed the same without consideration to the defendant, with knowledge on its part of the wrong of the agent. *Held,* that the plaintiff could maintain an action to compel the defendant to convey to it such title, notwithstanding the disability imposed upon it by said statute.

2. ——— *The State only may Interfere.* Under the provisions of said statute, the state is the only one that can insist upon the forfeiture therein denounced, and, even as against the state itself, the plaintiff is interested in such real estate, as it would be entitled to the net proceeds of the sale thereof.

Error from Barton district court; ANSEL R. CLARK, judge. Opinion filed May 10, 1902. Reversed.

*Cook & Gossett,* and *Elrick C. Cole,* for plaintiff in error.

*William J. Patterson,* for defendant in error.

The opinion of the court was delivered by

CUNNINGHAM, J.: The plaintiff in error was plaintiff in the court below. Its action was for the purpose of compelling the defendant in error to convey to it the legal title to certain lands in Barton county, Kansas, the equitable title to which the plaintiff in error claimed to hold, the allegations of the petition being such as to show that an agent of the plaintiff, without its knowledge or consent, had taken the title thereto, while acting for and on behalf of the plaintiff, and thereby had wrongfully become a trustee of such title for the benefit of the plaintiff, and that the defendant

had obtained such title with full knowledge and in contravention of plaintiff's rights. The defendant answered by several defenses, one of which was as follows :

"It admits that plaintiff is a corporation organized and existing under the laws of the United Kingdom of Great Britain and Ireland, and avers that plaintiff is a corporation, more than twenty per cent. ( 20 % ) of the capital stock of which is owned by persons who are not citizens of the United States ; that plaintiff is not competent or qualified, under the laws of the state of Kansas, to acquire, hold or own real estate in said state, as prayed for in its petition."

To this defense plaintiff demurred, which demurrer was by the court overruled, and, plaintiff standing upon the demurrer, judgment was rendered against it, from which judgment it brings error to this court.

This action was had while chapter 3 of the Laws of 1891 was in full force. The question is, therefore, whether a foreign corporation, when more than twenty per cent. of its stock is owned by those other than citizens of the United States, at that time may compel a conveyance to it of the legal title to land wrongfully taken by its agent in his own name.

By sections 1 and 2 of chapter 3 of the Laws of 1891 it was provided that no corporation, like the one specified in defendant's answer as above quoted, could acquire title to or take or hold any real estate in the state of Kansas. By section 5 of the same chapter it was provided that real estate held or owned in violation of the act should be forfeited to the state of Kansas, and the county attorney of the county in which the real estate was situated was directed to enforce such forfeiture by a civil action. Another section provided for the sale of such lands and payment of the costs of such action, and directed that the pro-

ceeds of such sale should be paid into the treasury of the state of Kansas, and there remain subject to the order of the person or persons entitled thereto. The entire act must be read together, and from it we deduce the conclusion that the title which was or should· become vested in the alien was liable to be defeated at the instance of the state by an action in its name only; that if the state elected to waive a forfeiture by neglecting to bring an action therefor, the alien would continue to hold and enjoy the real estate; that the question of the power of such alien to take and hold such title could not be raised by a private individual. This indeed was the rule at common law, the rule being thus stated in the American & English Encyclopedia of Law (2d ed.), volume 2, pages 70, 72:

"It is well settled that at common law an alien may take real estate by act of the parties, as by deed or grant, or devise, or by other act of purchase, but he cannot hold against the state. Under this rule, therefore, an alien takes a defeasible estate, good against all excepting the state, and good against it until it institutes proceedings and obtains a judgment by inquest of office or office found, or some legislative act equivalent thereto."

See, also, 1 Washburn on Real Property (5th ed.), 79. In *Racouillat v. Sansevain*, 32 Cal. 376, 386, it was held:

"The question as to the rights of a non-resident alien to hold property at common law, and, as we understand it under the civil law, was a matter between the alien and the government, and could not·be called in question in a collateral proceeding between individuals. The proceeding, at common law, to divest an alien of property purchased, is by an inquest of office; and, till office found, an alien may hold real estate. Under the civil law there was some analogous proceeding."

Many authorities might be cited to the same effect. The defendant, however, claims in its brief:

"Where the corporation does not have the power, under its charter, or under the laws of the state of its creation, to hold real estate, or, where legal title has not passed, any want of authority or capacity in the corporation to acquire and hold real estate in another state can be questioned by a private suitor, against whom suit is brought by the corporation."

We must dissent from the correctness of this claim when applied to the facts of this case. Here the agent of the plaintiff wrongfully took this title, and the defendant, with knowledge of this wrong, received the title from the agent, giving no consideration therefor. This being so, the defendant cannot be heard to defend this wrong by urging the statutory disability of the plaintiff to take title to the land. Equity will require that it convey to the plaintiff the title which it is wrongfully withholding, and then the state may, if it choose, pursue the forfeiture which the law gives to it as against the alien. The state is competent to care for itself and protect its own interests. It does not need the interference and help of the defendant.

It is also contended by the defendant that, while an action in ejectment would lie in behalf of the alien where such alien held the complete title, yet that rule does not here apply, inasmuch as the alien has only the equitable title. We are unable to distinguish upon principle between the right of an alien to recover the possession of land when it holds the legal title, and its right to recover the legal title and possession as against a wrong-doer when it holds the equitable title.

In *In the matter of Leefe*, 4 Edw. Ch. 395, it was held that a trustee appointed by the court who held title to certain lands could not successfully defend an action

brought by an alien to recover title thereto, the court announcing the doctrine that "the government alone can take advantage of an alien's disability to hold lands." In *The Conn. Mutual Life Ins. Co. v. Smith*, 117 Mo. 261, 22 S. W. 623, it was held that the capacity of a corporation to enforce its rights to real estate under an equitable title held by it could not be questioned by the trustee who held the legal title. (See, also, *Runyan v. Coster*, 14 Pet. 122, 10 L. Ed. 382.)

It is of no concern to the defendant that the statute has laid upon the plaintiff this disability. It cannot urge the disability to defeat the rightful owner. That the title, if vested in the plaintiff, would, under the statute, escheat to the state affords no reason why the defendant should retain it. To allow this would not only wrong the plaintiff but defraud the state, because the defendant, having defeated the plaintiff by this plea, might, if assailed by the state, say that it was not an alien, and not under the ban of the law, and could not, therefore, be defeated of its title. More than this, even an alien has rights under the statute, it being therein provided that, after the costs of the action to enforce the forfeiture are paid, the balance belongs to the alien.

Under our statute (Civil Code, § 595; Gen. Stat. 1901, § 5082), an equitable title may be, and frequently is, all there is of much value in respect to the title to land. The disabilities laid upon the holder of the equitable title only, by the common law, have largely vanished from our practice. The attaching of a naked legal title to the paramount equitable one is not infrequently but a matter of form.

Of course, the plaintiff could not recover had the legal title to the land been taken in the name of

another for the purpose of escaping the forfeiture de-
nounced by the statute.    The law would in such case
leave the parties where they had placed themselves.
Nor is this a case where an executory contract is
sought to be enforced.    What the rule might be in
such a case it is not necessary for us to announce.

The defendant insists that the last clause of the de-
fense, at which the demurrer was leveled, contained
the allegation, "that plaintiff is not competent or
qualified, under the laws of the state of Kansas, to
acquire, hold or own real estate in said state, as
prayed for in its petition," was an independent alle-
gation, and excluded the discussion of the incapacity
of the plaintiff to hold as set up in the first part of
said defense.    The contention of the defendant in
this respect is untenable.    This last-quoted clause is
separated from the other portions by a semicolon, and
it does not purport to be an independent allegation.
It is simply a conclusion from facts pleaded in the
former portions of the defense.    If it were otherwise,
and was pleaded independently of the other facts, still
it would not state a defense, as it contains no allega-
tion of fact, simply a conclusion of law.

For the error in overruling plaintiff's demurrer to the
second defense of defendant's answer, and in render-
ing judgment against the plaintiff, the judgment of
the court below will be reversed, and the case re-
manded for further proceedings.

JOHNSTON, POLLOCK, JJ., concurring.