·T. J. MADDEN v. THE STATE OF KANSAS *et al.*

No. 13,494.   (75 Pac. 1023.)

SYLLABUS BY THE COURT.

1. TITLE AND OWNERSHIP—*Non-resident Alien.* Under section 1 of the alien land law of 1891 (Laws 1891, ch. 3), a non-resident alien could take a title by purchase to land in this state, defeasible only at the suit of the state.

2. ———— *Escheat—Alien Land Law—Estoppel.* In an action by the state to escheat land under the alien land law of 1891, the heirs of a resident citizen are estopped by their ancestor's warranty deed to a non-resident alien from claiming the land conveyed or the proceeds of its sale.

3. ———— *Rights of the State Determined.* In such an action the rights of claimants to the land who, in litigation between themselves, to which the state was not a party, have both been denied relief, may be investigated and determined as against the state.

Error from Nemaha district court; WILLIAM I. STUART, judge. Opinion filed March 12, 1904. Affirmed.

*L. F. Bird,* and *R. M. Emery,* for plaintiff in error.

*E. A. Berry,* and *W. W. Redmond,* for defendants in error.

The opinion of the court was delivered by

BURCH, J. : In October, 1895, Mark Madden, a resident citizen of this state, undertook to convey by warranty deed certain land in Marshall county to James O'Toole, then a non-resident alien. Within a few weeks from that time Mark Madden died, leaving neither wife nor child. His parents, both non-resident aliens, were already deceased. His nearest relatives were several non-resident alien brothers and sisters and the resident citizen heirs of his deceased brother, William P. Madden, who at the time of his death was a resi-

dent citizen of this state. One of these heirs is Terrence J. Madden. In December, 1895, James O'Toole was adjudged to be insane and a guardian was appointed for him, who immediately commenced an action to set aside a will and a deed of the land purporting to be made to Terrence J. Madden, and to quiet title against those instruments. Madden defended on the ground of title under the deed and will, and also as an heir through his father, William P. Madden, and prayed that his title be quieted. Upon a trial, the deed and will were found to be fraudulent. The court held that O'Toole was incapable of acquiring title to the land on account of alienage. No specific finding of fact or conclusion of law was made respecting Terrence J. Madden's claim of title through heirship, but the court denied any relief to either party. The county attorney of Marshall county then brought an action against O'Toole and his guardian to escheat the land. Terrence J. Madden intervened, having purchased since the last litigation the supposed interests of other heirs of William P. Madden, and denied the right of the state to escheat the land. The court adjudged otherwise, and ordered the proceeds of the sale to be paid to the guardian of O'Toole. Terrence J. Madden asks that this judgment be reversed.

On behalf of the intervenor it is said that section 1 of the alien land law, chapter 3, Laws of 1891, rendered James O'Toole incapable of taking title to the land, and, hence, that title did not pass from Mark Madden by virtue of his deed. The material portion of the section referred to is as follows :

"That a non-resident alien, firm of aliens, or corporation incorporated under the laws of any foreign country, shall not be capable of acquiring title to or taking or holding any lands or real estate in this state."

This language is broad enough to sustain the propositions advanced ; but it must be construed with other provisions of the same statute. By section 8 it is clearly contemplated that non-resident aliens may acquire title to land in this state by purchase. It is there said that a non-resident alien, owning land at the time the law took effect, might have the right and power to dispose of it during his lifetime, and to take securities for the purchase-money, "except that if he or his non-resident heirs again obtain title to the said lands or any sale thereof made by virtue of any judgment or decree of any court of law or equity, rendered in order to enforce the payment of any part of such purchase-money, he or his non-resident heirs shall only hold the title to said lands for three years after obtaining the same." It will be noted that the word "except" refers merely to the time for which the title may be held. The character of the alien who may take is not made exceptional, the circumstances under which the taking may occur are not made exceptional, and the taking of a title by a non-resident alien by purchase is treated as a matter of course. From this and other provisions of the statute, it appears that the primary distinction it makes regarding the lands of aliens is between those the titles to which are subject to immediate forfeiture and those which may be enjoyed for a time under certain conditions. This interpretation of the law is in harmony with its history.

The common law with reference to the rights of aliens to take and hold the title to real estate was abrogated by the original section 17 of the bill of rights, providing as follows :

"No distinction shall ever be made between citizens and aliens in reference to the purchase, enjoyment or descent of property."

By the constitutional amendment of 1888, this section was made to read as follows :

"No distinction shall ever be made between citizens of the state of Kansas and the citizens of other states and territories of the United States in reference to the purchase, enjoyment or descent of property. The rights of aliens in reference to the purchase, enjoyment or descent of property may be regulated by law."

At that time the word "regulate" had been given a definite legal meaning in this state.

"This court has held, in *City of Emporia v. Volmer*, 12 Kan. 630, that the words restrain and regulate are not synonymous with prohibit." (*Stebbins v. Mayer*, 38 Kan. 573, 577, 16 Pac. 745.)

So, in the case of *Wuester v. Folin*, 60 Kan. 334, 339, 56 Pac. 490, 491, it was said : 

"It will be observed that section 17 of the bill of rights, as amended in 1888, does not prohibit the taking or holding of lands by aliens, but only provides that their rights in that respect be regulated by law. The act of 1891 undertakes to regulate the rights of aliens in reference to the purchase, enjoyment or descent of real property in Kansas."

And in harmony with this theory of the constitutional amendment, the case of *Investment Co. v. Trust Co.*, 65 Kan. 50, 53, 68 Pac. 1089, 1090, was decided, in which it was said :

"The entire act must be read together, and from it we deduce the conclusion that the title which was or should become vested in the alien was liable to be defeated at the instance of the state by an action in its name only ; that if the state elected to waive a forfeiture by neglecting to bring an action therefor, the alien would continue to hold and enjoy the real estate ; that the question of the power of such alien to take and hold such title could not be raised by a

private individual. This indeed was the rule at common law."

The controlling considerations mentioned above were not available to the supreme court of Illinois in the case of *Wunderle et al. v. Wunderle*, 144 Ill. 40, 33 N. E. 195, 19 L. R. A. 84, relied upon by the intervenor. Hence, that decision is not an authority, and the rule announced in the case of *Investment Co. v. Trust Co.*, supra, will be adhered to. This being the law, James O'Toole took a title under the deed from Mark Madden, forfeitable only at the instance of the state, and upon forfeiture the heirs of Mark Madden were estopped by the covenants of his warranty deed from claiming any title to the land.

In the suit between the gardian of O'Toole and Terrence J. Madden the latter was necessarily adjudged to take nothing as an heir, since all his claims were denied. Title of that origin and quality was decided to be as valueless as O'Toole's deed. The purchase of other fractions of title affected with the same taint could not improve his right; but O'Toole was likewise denied relief. Therefore, neither one can contest with the other over the proceeds of the sale of this land. The state, however, was not a party to that suit. It would not have been concluded by the judgment rendered in that action if it had been decided that one of the parties had an incontestable right to the land, and it is elementary law that the estoppel of a judgment must be mutual. When, therefore, the state took possession of the land to sell it and to hold the proceeds for the true owner, who, under the statute, must be ascertained by the court, the parties had the right to present their claims against the state, even though they could not recover from each other.

The judgment of the district court is affirmed.

All the Justices concurring.