SAMUEL C. SARVER, *et al.*, v. C. N. BEAL, *et al.*

1. DESCENTS AND DISTRIBUTIONS; *Comp. Laws of 1862.* Where in 1864, R. dies, leaving no relatives or heirs except a stepfather, one C. who was at the time of his (R.'s) mother's death, her second husband, and an uncle, N., a brother to his mother, and a cousin, S., the daughter of another brother to his mother, and where all his other relatives had previously died, his father having died at a time previous to 1850 and previous to his mother's death, and his mother having died previous to 1858, *held*, under §§ 18, 19, 20 and 29 of the act of the legislature, approved February 8, 1859, relating to descents and distributions, ( Comp. Laws of 1862, ch. 80, §§ 18, 19, 20, 29,) that R.'s property will be inherited in the same manner as though the mother had outlived the son and had inherited the property and then died in the possession and ownership thereof; and *therefore held*, that the stepfather, as the heir of the mother, will, under said act of the legislature, inherit R.'s property.

2. PARAMOUNT TITLE; *Quitclaim Deed; Tax Deed.* After R.'s death, B. and D. obtained from N. and S. a quitclaim deed for R.'s property, and E. obtained a tax deed to a portion of the same and the actual possession of such portion, and claimed title thereto: *Held*, That E.'s title to the property claimed by him is paramount to that of B. and D., although the tax deed may be void upon its face.

3. PARAMOUNT TITLE; *Administrator's Deed; Mortgage; Ejectment; Foreclosure; Sheriff's Deed; Notice.* After R.'s death, C., by proper proceedings, obtained an administrator's deed to another portion of the property, a portion not claimed by E., and took actual possession of such portion, and afterward mortgaged the same to H., and before any action was commenced to foreclose this mortgage, N. and S. commenced an action of ejectment against C. to recover all the prop-

erty; and while such action was pending, C. gave H. another mortgage, on this and other land, to secure the original mortgage debt, which was still due and unpaid, and the first mortgage was released; and while the ejectment action was still pending, H. commenced a foreclosure action on her second mortgage, and obtained judgment against C. for the amount of the mortgage debt and to foreclose the mortgage; and afterward, N. and S. obtained judgment in the ejectment action against C.; and afterward, H., by proper proceedings, procured a sheriff's deed for the mortgaged property; and H. was not a party to the ejectment action, nor had she any notice thereof nor any notice that any adverse title existed against the title of C.; nor was N. or S. a party to the foreclosure action. *Held*, That the title of N. and S. is under the judgment in the ejectment action, and as against C. relates back to the time of the commencement of the ejectment action; and that the title of H. is under the sheriff's deed, and relates back to the time of the execution of the second mortgage; and that H. holds under and in privity with C.; and *therefore held*, that the title of N. and S., being prior in time to that of H., is paramount and superior thereto.

4. ———— *Paramount Title.* And in such a case, where N. and S., after the judgment in the ejectment action, conveyed their title by a quitclaim deed to B. and D., and H., after procuring her title by virtue of the sheriff's deed, conveyed her title by warranty deed to S. C. S. and S. C. S. took the actual possession of the property, *held*, that the title of B. and D. is paramount and superior to that of S. C. S.

## *Error from Shawnee District Court.*

EJECTMENT brought by *Beal* and *Douthitt* against *Sarver* and three others. Trial by the court, August 5, 1884, and judgment for plaintiffs. The defendants bring the case to this court. The facts are fully stated in the opinion.

*J. G. Slonecker,* and *Foster & Hayward,* for plaintiffs in error.

*John T. Morton,* and *W. P. Douthitt,* for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action in the nature of ejectment, brought in the district court of Shawnee county on August 21, 1882, by John A. Beal and William P. Douthitt against Samuel C. Sarver, Isabel A. Sarver, John D. Knox,

and David Eckart, to recover the possession of certain real estate. The case was tried on August 5, 1884, by the court, without a jury, and the court, after making separate and special findings of fact and conclusions of law, rendered judgment in favor of the plaintiffs and against the defendants for the recovery of the property. On August 4, 1885, the death of John A. Beal was suggested, and the action was revived in the names of C. N. Beal, J. A. Beal, L. G. Beal, M. S. Beal, and Mary J. Beal, heirs and survivors in interest of said John A. Beal; and afterward, but on the same day, the case was brought to the supreme court for review by Samuel C. Sarver, Isabel A. Sarver, and David Eckart, as plaintiffs in error, and all the other parties, except John D. Knox, were made defendants in error.

It is admitted by the parties that William M. Rice, a Pottawatomie Indian, once owned the land in controversy; and all the parties, except Eckart, claim under him. Eckart claims only a portion of the land, and his claim is founded upon the actual possession of the land, with a claim of title thereto under a tax deed, executed September 22, 1880, and recorded on the same day. This tax deed, however, is void upon its face. The other parties claim title as follows: In 1864, Rice died, without ever having been married, and leaving no relatives or heirs, except a stepfather, one Cleghorn, who was at the time of his (Rice's) mother's death her second husband, and an uncle, Na-mah-sh-kuk, a brother to his mother, and one cousin, Mary Slevin, his mother's other brother's daughter. All his other relatives had previously died; his father having died at a time previous to 1850 and previous to his mother's death, and his mother having died previous to 1858. Samuel C. Sarver and Isabel A. Sarver are husband and wife, and claim under the same title. They claim only a portion of the land in controversy, and not that portion occupied by Eckart; nor does Eckart claim any portion of the land which they, the Sarvers, occupy. They are in the actual possession of the land claimed by them, and they claim title thereto under an administrator's deed executed March 1, 1870, by Julius Her-

man, the administrator of the estate of said William M. Rice, deceased, to Martha J. Colcher, and by subsequent conveyances and other proceedings transferring Mrs. Colcher's title to them. The Beals and Douthitt claim title to the whole of the land in controversy, under a quitclaim deed executed September 28, 1875, by Na-mah-sh-kuk and Mary Slevin to John A. Beal and William P. Douthitt.

The first question to be considered in this case is, whether under the statutes Cleghorn on the one side, or Na-mah-sh-kuk and Mary Slevin on the other side, inherited the property from the said William M. Rice. Sections 18, 19, 20 and 29 of the act of the legislature approved February 8, 1859, relating to descents and distributions, (Comp. Laws of 1862, . ch. 80, §§ 18, 19, 20, 29,) which act was in force at the date of the death of William M. Rice, read as follows:

"SEC. 18. If the intestate leaves no issue, the whole of his estate shall go to his wife, and if he leaves no wife nor issue, the whole shall go to his father.

"SEC. 19. If his father be previously dead, the portion which would have fallen to his share by the above rules shall be disposed of in the same manner as though he had outlived the intestate and died in the possession and ownership of the portion thus falling to his share, and so on through each ascending ancestor and his issue, unless heirs are sooner found.

"SEC. 20. If heirs are not found in the male line, the portion thus uninherited shall go to the mother of the intestate and to her heirs, following the same rules as above prescribed."

"SEC. 29. All the provisions hereinbefore made in relation to the widow of a deceased husband shall be applicable to the husband of a deceased wife. Each is entitled to the same rights or portion in the estate of the other, and like interests shall in the same manner descend to their respective heirs. The estate of dower and by courtesy are hereby abolished."

It appears that at the date of the death of William M. Rice no heirs of his in the father's line were living; hence, it is necessary to look to the mother's line; and the question then arises, who would be the mother's heirs, provided she "had outlived the intestate and had died in the possession and ownership of the" property in controversy?—for under the

statutes above quoted it is admitted that the property would thus descend. Eckart and the Sarvers claim that in such a case Cleghorn, the mother's surviving husband, would be the mother's heir; while the Beals and Douthitt claim that Namah-sh-kuk and Mary Slevin, the mother's brother and niece, would be her heirs. It would seem to us that under the statutes and the circumstances of this case, Cleghorn would undoubtedly be the mother's heir, and that really there could not be much room for doubt upon the subject. Of course the property could not pass from the son until after his death, and then only to some living person or persons, and to him or them directly and immediately. It could not pass to any deceased person or through any deceased person. It could not pass to or through the mother, for she was dead. The mother never had, and could not have, any title to the property in controversy, either before or after her death, or before or after her son's death, for she died before the son's death; and she is mentioned only for the purpose of indicating or of fixing a rule for determining to whom the property of the son directly went when he died; and the statutes in force at the time of the son's death must govern; or, in other words, if she had lived until after her son's death, and had then died, the statutes then in force must govern. Statutes that may have been in force at some time during her lifetime, but not in force when the son died, cannot have any application to this case. The statutes above quoted are the ones which were in force when the son died, and are therefore the ones which must govern in this case. Under § 29 of said statutes, all the provisions of law having relation to the widow of a deceased husband have application to the husband of a deceased wife; and as § 18 provides that when a husband dies leaving no issue, the whole of his estate shall go to his wife, it necessarily follows that when a wife dies leaving no issue, the whole of her estate must go to her husband; and under § 19 the heirs of Cleghorn's wife, Rice's mother, would inherit the property of Rice in the same manner as though she had outlived her son and had then died in the possession and

1. Descents and distributions; Comp. Laws of 1862.

ownership of the property. Now unquestionably if Cleg-
horn's wife, Rice's mother, had outlived Rice, and been in the
possession and ownership of the property after Rice's death,
and had then died, Cleghorn would have taken all the prop-
erty. This, we think, is just what the statutes in effect pro-
vide. We also think that the foregoing views are sustained
and supported, if they do not necessarily follow from the de-
cisions made in the cases of *McKinney v. Stewart,* 5 Kas. 384,
391, 392, and *Fletcher v. Wormington,* 24 id. 259, 263, 264.

2. Paramount
title; quit-
claim deed;
tax deed.

It will therefore follow that as between Eckart
on the one side. and the Beals and Douthitt on
the other, the judgment of the court below must
be reversed, and judgment rendered in favor of Eckart; for
as between these parties the Beals and Douthitt have no right,
title or interest in or to the property claimed by Eckart, as
they have no possession thereof, and only a quitclaim deed
thereto from Na-mah-sh-kuk and Mary Slevin, who them-
selves never had any interest in the property.

We shall now proceed to consider what the rights of the
other parties are. As the Sarvers have the actual possession
of the property which they claim, claiming title thereto and
having color of title thereto, it would seem that the same re-
sult would follow as between them on the one side and the
Beals and Douthitt on the other as follows with reference to
Eckart's claim; and it would, except for certain matters
which the Beals and Douthitt interpose as an estoppel. The
administrator's deed under which the Sarvers claim was exe-
cuted March 1, 1870, by the administrator of Rice's estate,
and was recorded March 2, 1870. This deed was executed
to Martha J. Colcher for the consideration of $575.80, which
sum she paid to the administrator. She took actual posses-
sion of the property. On November 17, 1871, Mrs. Colcher
mortgaged the property to Catharine W. Healea to secure a
debt of $500, which mortgage was recorded on the same day.
On June 13, 1872, Na-mah-sh-kuk and Mary Slevin com-
menced an action of ejectment against Mrs. Colcher to recover
the land. Neither Mrs. Healea nor the Sarvers were made

parties to that action, nor had they any notice thereof. On November 5, 1872, a new mortgage was executed by Mrs. Colcher to Mrs. Healea, including among other lands the lands contained in the old mortgage, and the old mortgage was released. This new mortgage was executed to secure the same debt for which the old mortgage was given, that debt still being due and unpaid. On September 7, 1874, Mrs. Healea commenced an action against Mrs. Colcher and husband to recover said mortgage debt and to foreclose the mortgage, and by consent of parties judgment was rendered on the same day in favor of the plaintiff and against the defendants for $745.10, and to foreclose the mortgage. Neither Na-mah-sh-kuk nor Mary Slevin was a party to that action. On September 3, 1875, judgment was rendered in the ejectment action in favor of Na-mah-sh-kuk and Mary Slevin and against Mrs. Colcher for the recovery of the land then in controversy; but neither Mrs. Healea nor the Sarvers had any knowledge of the pendency of that action. On September 28, 1875, Na-mah-sh-kuk and Mary Slevin executed a quitclaim deed for all the land now in controversy to John A. Beal and William P. Douthitt, which deed was recorded on the same day. On April 22, 1876, in pursuance of the said foreclosure judgment in the case of Healea v. Colcher and husband, and in pursuance of other proper and necessary proceedings, the sheriff executed a sheriff's deed to Mrs. Healea for the mortgaged property now claimed by the Sarvers, which deed was recorded on the same day. On August 18, 1876, Mrs. Healea and husband conveyed the said land by warranty deed to Samuel C. Sarver, the Sarvers having no actual knowledge of any adverse title to the land, and paying to Mrs. Healea therefor the sum of $573.80. The deed was recorded on September 25, 1876. Immediately afterward the Sarvers took actual possession of the land under their deed from Mrs. Healea, and have remained in the possession thereof ever since. On August 21, 1882, more than five years after the Sarvers took actual possession of the property, this action was commenced. Under

36 — 36 KAS.

these facts, which have the paramount right to the property in controversy—the Sarvers, or the Beals and Douthitt? We shall now proceed to consider this question.

The Beals and Douthitt, as before stated, claim title under a quitclaim deed from Na-mah-sh-kuk and Mary Slevin to John A. Beal and William P. Douthitt, and they claim that Na-mah-sh-kuk and Mary Slevin had two separate and distinct titles, one as the heirs of William M. Rice, deceased, and the other as the successors in interest to Mrs. Colcher, by virtue of the ejectment proceedings hereinbefore mentioned. Now as before stated, the title of Na-mah-sh-kuk and Mary Slevin as the heirs of William M. Rice, deceased, is utterly worthless, and can give the parties claiming under it no standing in court. Hence it becomes necessary to consider their other claim of title, through Mrs. Colcher and by virtue of said ejectment suit. Both parties claim under Mrs. Colcher, and hence both must admit and virtually do admit that her title under her administrator's deed is good. The Beals and Douthitt claim by virtue of the recovery in the aforesaid ejectment suit and their quitclaim deed from the successful parties, Na-mah-sh-kuk and Mary Slevin; while the Sarvers claim under the aforesaid mortgages from Mrs. Colcher to Mrs. Healea, the foreclosure of the second mortgage, the sheriff's deed to Mrs. Healea, the warranty deed from Mrs. Healea to Sarver, and their actual occupancy and possession of the property. The first mortgage above mentioned was executed prior to the commencement of the ejectment action, but as a mortgage in this state gives no title to the mortgaged property nor any right of possession, but only a lien thereon, and as this mortgage was never foreclosed but was surrendered and released without any proceedings ever being had thereon, and as it is not mentioned in any of the pleadings in the case, it would seem that no rights can be maintained under it in this present action of ejectment. As to what might be the rights of the parties if different pleadings had been filed, or what might be their rights in some other action, it is not necessary now to consider. Whether the Sarvers might under other

pleadings or in some other action be subrogated to the rights of Mrs. Healea under her first mortgage, is a question which we need not consider in this case. Mrs. Healea was never the owner of the property by virtue of either of her mortgages as mortgages; nor had she any right to the possession by virtue of such mortgages. From the time when Mrs. Colcher received her administrator's deed down to the time when the judgment was rendered against her in the ejectment action, she alone was the owner and the entire and absolute owner of the property, and Mrs. Healea had nothing but a lien thereon, with no right of possession, and the lien of the first mortgage was wholly released. But passing from the question as to what the rights of the Sarvers are under the first mortgage, what are their rights under the second mortgage, or under the two taken together? But in passing, we might here say that the authorities cited by counsel for the Sarvers have no application to this case. In these authorities the questions were raised in proper cases, by proper pleadings, and the facts were different from the facts in this case. The principal cases cited are the following: *Hutchinson v. Swartsweller*, 31 N. J. Eq. 205; *Bruse v. Nelson*, 35 Iowa, 157; *Stimpson v. Pease*, 53 id. 572; *Cobb v. Dyer*, 69 Me. 494; *Shaver v. Williams*, 87 Ill. 469.

The second mortgage was executed by the defendant in the ejectment suit while that suit was pending, and was also foreclosed against the mortgagor while that suit was pending; and therefore, under the doctrine of *lis pendens*, the parties taking that mortgage and afterward foreclosing it could, as against the other parties and their privies, procure no more or greater rights than their mortgagor, Mrs. Colcher, might in that ejectment action be adjudged to have. After the execution of said mortgage, and after its foreclosure, it was determined in the ejectment action that Mrs. Colcher, the mortgagor, had no interest in the mortgaged property; and therefore, although that determination was in all probability wrong, yet it was made, and by it the plaintiffs in that action, Na-mah-sh-kuk and Mary Slevin, took, as against Mrs. Colcher and all persons in privity with

her, all the right, title and interest in and to the property which the defendant in that action and the mortgagor, Mrs. Colcher, had at the time of the commencement of that action. (See *Utley v. Fee*, 33 Kas. 683; *Belz v. Bird*, 31 id. 139, 140.) Afterward, Beal and Douthitt by their quitclaim deed obtained all the interest in and to the property which Na-mah-sh-kuk and Mary Slevin had, and which they obtained from Mrs. Colcher by virtue of the ejectment action, which was all the interest which Mrs. Colcher had in and to the property at the time when the ejectment action was commenced. Afterward, when the sheriff's deed was executed to Mrs. Healea, she took only the interest in the property which Mrs. Colcher then had, which was in fact no interest at all; and therefore Mrs. Helea had no interest to convey to Sarver. Hence the Sarvers have procured no interest in or to the premises. They hold under and in privity with Mrs. Colcher, whose interest was taken away from her by the ejectment action. As before stated, both parties claim under Mrs. Colcher, the Beals and Douthitt through Na-mah-sh-kuk and Mary Slevin, and the Sarvers through Mrs. Healea. The title of Na-mah-sh-kuk and Mary Slevin was completed, and indeed created, on September 3, 1875, when the judgment in the ejectment action was rendered; but it relates back to June 13, 1872, when the ejectment action was commenced. Mrs. Healea's title was completed, and in fact created, on April 22, 1876, when the sheriff's deed to her was executed; but it relates back to December 5, 1872, when the second mortgage from Mrs. Colcher to her was executed. Hence it will be seen that the title of Na-mah-sh-kuk and

3. Paramount title.

Mary Slevin, under which the Beals and Douthitt claim is earlier in its origin and earlier in its completion than the title of Mrs. Healea, under which the Sarvers claim. And here again we might say that Mrs. Healea got no title by any of the proceedings until her sheriff's deed was executed, although by a fiction of law her title relates back to the time of the execution of the second mortgage for the purpose of antedating and cutting out any intervening rights of others. It follows, therefore, that the title

4. Superior title. of the Beals and Douthitt is prior and superior to the title of the Sarvers; and hence, as between the Beals and Douthitt on the one side and the Sarvers on the other, the judgment of the court below must be affirmed.

We have assumed in the decision of this case that both the administrator's deed to Mrs. Colcher and the sheriff's deed to Mrs. Healea are absolutely valid, and not open to any serious attack; and we think both are good and valid; but the same result would follow whether we should consider them good or bad.

The judgment of the court below as against the Sarvers will be affirmed, but as against Eckart it will be reversed.

All the Justices concurring.