RANDENI MEIER v. ELSA A. LEE and HELGE HOGFOSS, Appellants and PAUL H. PAULSON, *et al.*

**Descent and Distribution.** ALIENS: *Next of kin.* Code, 1873, section 2457, providing that, "if both parents be dead, the portion which would have fallen to their share by the above rules shall be disposed of in the same manner as if they had outlived the intestate, and died in the possession and ownership of the portion thus falling to their shares," does not entitle claimants who are children of a sister of an intestate's father to inherit, when the mother through whom they claimed was disqualified because a non-resident alien, (Act April 9, 1888,) although such ancestor had died before claimant and before the intestate, and though said children are the nearest relatives of the intestate, all parties to this action being citizens of the United States.

**TREATIES.** A non-resident alien is not empowered to acquire or inherit an interest in lands in Iowa by virtue of the treaty of 1783 between the king of Sweden and the United States providing that the subjects of the contracting parties in the respective states, although unnaturalized, may dispose of and inherit *goods and effects.*

*Appeal from Mitchell District Court.*—HON. J. C. SHERWIN, Judge.

WEDNESDAY, OCTOBER 12, 1898.

PLAINTIFF, widow of Paul E. Meier, who died a citizen of Mitchell county, Iowa, on the twenty-fourth day of May, 1892, intestate and without issue, brought this action to partition certain land in said county he owned at the time of his death, of which she claims one-half. Paul H. Paulson and the other defendant appellees answered, admitting that plaintiff was entitled to one-half of said land, and by cross bill alleged that they are the sole and only heirs at law of said deceased, other than the plaintiff, competent to inherit said real estate, and claiming the one-half thereof. The defendants Else A. Lee and Helge Hogfoss were served by publication, and, not appearing, decree was rendered giving to plaintiff one-half of

the land, and to said defendant appellees the other half. Thereafter, and in due time, the appellants, Else A. Lee and Helge Hogfoss, filed their motion to set aside the default and decree, and their answer and cross petition, claiming that, as heirs at law of said deceased, they are entitled to three-eighths of said land. The defendants, appellees, demurred to said answer and cross petition on the ground that the facts stated do not entitle said cross petitioners, or any of them, to any part of said land. This demurrer was sustained, and, said cross petitioners electing to stand upon their petition, the former judgment and decree were confirmed, and the defendants Else A. Lee and Helge Hogfoss appeal.—*Affirmed.*

*W. L. Eaton* for appellants.

*Sweney & Lovejoy* for appellees.

GIVEN, J.—I. The claim of the plaintiff to one-half of the land is not disputed. The contention is between Paul H. Paulson and the other defendant appellees on the one side, and the defendant appellants on the other side. The facts as shown in appellants' cross petition necessary to be noticed are these: The deceased left neither parent, brother, sister, grandparent, uncle, nor aunt surviving him, and the parties to this appeal were his nearest living relatives. Appellees were the decedent's cousins of half blood, having with him a common grandfather, but a different grandmother. Appellants were decedent's cousins of full blood, having with him a common grandfather and grandmother. All parties to this action are citizens of the United States. Prior to the death of Paul E. Meier, the common grandfather and grandmother and the mother of appellants had died, nonresident aliens; and the decedent's father and the father of appellees, who were half-brother, had also died, both being citizens of the United States at the time they died.

The following diagram presented by appellees' counsel will better show the relation of the different persons, and the

lines of inheritable and non-inheritable blood, than can be expressed in words:

EXHIBIT E.

Heavy line is the line of inheritable blood.
Light line is the line of noninheritable blood.

From this it will be seen that appellees inherit through their father, Anders Meier, brother of Elling Meier, father of decedent, all citizens of the United States. Now, although

Elling and Anders died before the intestate, Paul E. Meier, yet, under section 2457 of the Code of 1873, the estate passes the same as if they had survived Paul E. Meier. Such being the law and the facts, no question is made as to the rights of appellees, the Paulson family, to share in the estate. It will be seen that appellants, Hogfoss and Lee, are children of Ingeborg Hogfoss, sister of Elling Meier, the father of the intestate. If Ingeborg Hogfoss had been a citizen of the United States at the time of her death, there would be no question of appellants' right to share in this estate; but she was a non-resident alien, and the question is whether that fact cuts off appellants' right to inherit. It is conceded that this case comes under chapter 85, Acts Twenty-second General Assembly, approved April 9, 1888, the first section of which, so far as applicable, is as follows: "Non-resident aliens are hereby prohibited from acquiring title to or taking or holding any lands or real estate in this state by descent, devise, purchase, or otherwise." It is clear that, because of her alienage, Ingeborg Hogfoss would not have been entitled to share in this estate, even if she had survived the intestate, and that the estate cannot be transmitted through a non-resident alien.

Appellants' contention is not that they take mediately through their mother, Ingeborg Hogfoss, but, that, under said section 2457 of the Code of 1873, they take immediately from the decedent. Said section is as follows: "If both parents be dead, the portion which would have fallen to their share by the above rules, shall be disposed of in the same manner as if they had outlived the intestate and died in the possession and ownership of the portion thus falling to their share, and so on through ascending ancestors and their issue." Appellants cite Lash v. Lash, 57 Iowa, 88, wherein it is said: "Whatever the plaintiff or any other heir of the intestate takes, he takes directly from the intestate, and not otherwise. Nothing, in fact, intervenes between the death of the intestate and the transmission of his estate to his heirs. The survivorship of

the parents is a fiction. We suppose it to determine the
descent." In that case there was no question of alienage to
intervene, the persons all being citizens. It was held that
the will of the intestate's father, who died before him, did
not convey property which belonged to his son, and that such
property constituted no part of the father's estate; therefore,
there was no fact in the case to intervene between the death
of the intestate and the transmission of his estate to his heirs.
*Moore v. Weaver,* 53 Iowa, 11, and *In re Parker's Estate,* 97
Iowa, 593, also cited, are not in point. The case of *Furenes
v. Mickelson,* 86 Iowa, 508, is so nearly like this in its facts,
and under the same statute, that we think it controlling in this
case. "Thor Olson, the decedent, was a brother of Steine
Olson, who is also deceased. Steine Olson was the grand-
father of the plaintiff, but his son, the father of the plaintiff,
is living, and is, and always has been, a non-resident alien."
From this statement of the facts of that case it will be
observed that it only differs from this in that the father of
the plaintiff was living; while in this the mother of the appel-
lants died before the intestate. This, however, cannot, under
said section 2457, make any difference. In that case, after
considering the distinction between mediate and immediate
descent, this court said: "The case of the plaintiff must be
determined according to his pedigree. The descent from
the decedent to him is not immediate, but mediate, through
his father. As the latter had no inheritable blood, the plaintiff
has acquired from him no right of inheritance. If chapter
85 of the Acts of the Twenty-Second General Assembly had
not been enacted, the father would have inherited the interest
now in controversy. That act took from him the right of
inheritance, but did not confer it upon the son." In *Burrow v.
Burrow,* 98 Iowa, 400, we said that in *Furenes v. Mickelson,
supra,* "we held that a resident whose father was a non-resi-
dent alien could not inherit through his father's brother, who
was a resident of the state, since he would derive his title
mediately, through his father, and not immediately, through

his uncle; and that, by reason of the provisions of the act of the Twenty-Second general assembly before quoted, the resident derived no title to the land in dispute." Counsel on both sides have argued this question with marked care and ability, and with many citations of authorities; but as the case rests upon our own statutes, which have been fully construed, we do not refer to other than Iowa cases. Following *Furenes v. Mickelson, supra,* we hold that the descent to appellants is mediate, and that they cannot take through their alien mother, as she could not have taken if alive, because of the provisions of said section 1, chapter 85, Acts Twenty-second General Assembly.

II. Appellants cite the treaty of 1783, between the king of Sweden and the United States (page 1042, Treaties and Conventions Between the United States and Other Powers), and insist that, under article 6 thereof, appellants' mother was not disqualified from inheriting an interest in this land. Article 6 contains the following: "The subjects of the contracting parties in the respective states may freely dispose of their goods and effects, either by testament, donation, or otherwise, in favor of such persons as they think proper; and their heirs, in whatever place they shall reside, shall receive the succession even *ab intestato,* either in person or by their attorney, without having occasion to take out letters of naturalization." Conceding that this treaty is still in force,—a matter we do not determine,— we are of the opinion that it does not apply to lands. "Goods: A valuable possession or piece of property; especially, and almost universally, in the plural, goods, wares, commodities, chattels." "Effects: Goods, movables, personal estate." Webster. "Goods and effects" have never been held to include real estate. The demurrer was properly sustained, and the decree is therefore AFFIRMED.