CATHARINE SMITH *et al.* v. CATHARINE LYNCH.

No. 11,525.    ( 60 Pac. 329.)

DESCENTS AND DISTRIBUTIONS—*Aliens.* Because of the prohibition of the alien land act of this state (Gen. Stat. 1897, ch. 51, § 1; Gen. Stat. 1899, § 1194), the lands of a deceased resident citizen, dying intestate, cannot be acquired under the statute of descents (Gen. Stat. 1897, ch. 109, §§ 19, 20; Gen. Stat. 1899, §§ 2459, 2460) by a collateral kinsman, although a resident citizen, when the ancestor through whom the claim of inheritance is made was, at the time of his death, a non-resident alien.

Error from Marshall district court; CHARLES W. SMITH, judge *pro tem.* Opinion filed March 10, 1900. Affirmed.

*J. A. Broughten,* for plaintiffs in error.

*W. W. Redmond,* for defendant in error.

The opinion of the court was delivered by

DOSTER, C. J. : This was an action of partition brought by Catherine Smith and others against Catharine Lynch. The case was heard upon the following agreed statement of facts :

"It is agreed that on October 1, 1859, a patent was issued by the United States to one Peter Lynch for the northeast quarter of section twenty-four (24), township one (1) south, of range ten (10) east, being 160 acres of land based upon a land-warrant, which patent was entered of record March 2, 1883, in volume thirty-seven (37), page 253, of the records in the office of the register of deeds of Marshall county, Kansas ; that at or about the time of the issuing of the patent, said Peter Lynch and his sister, the defendant Catharine Lynch, both being unmarried, took up their residence upon the land and continued to reside on it up to the time of his death on December 22, 1897, intestate ; and since which time, the defendant Catha-

rine Lynch has continued to and now resides upon the land; that said Peter Lynch, being alien born, on August 9, 1856, before the circuit court of Will county, Illinois, duly declared his intention to become a citizen of the United States; that said Peter Lynch, having died intestate and unmarried, left surviving him his sister, Catharine Lynch, and the children of a deceased brother, Edward Lynch, who died about thirty (30) years ago, an alien, and died abroad; that both parents of said Peter Lynch were dead at the time of his decease; that the children of his deceased brother, Edward, are the plaintiff Catharine Smith and the defendants, Patrick and Peter Lynch, and the children of a deceased child, Edward, Alice, Mary, John, Leo, Rosella, and Joseph Menehan, who are the children of Ann Menehan; that the said plaintiff and Peter Lynch came to Kansas in June, 1873, and that the defendants, Patrick Lynch and Anna Menehan, *nee* Lynch, came to Kansas in October, 1873; that all the parties took up their residence in Kansas and have continued to reside there ever since and are now residents of Kansas; that all of the said Menehan children are also residents and natural-born citizens, and all reside in Marshall county, Kansas; that plaintiff, when she came to Kansas was 19 years old; Peter was 14; Anna was 17; and Patrick was 18 years old, and have continued to reside in Marshall county since their arrival in Kansas; and that the widow of said Edward Lynch, deceased, is still living and resides in Kansas and has so resided since October, 1873; and that Edward Lynch died in in Ireland, intestate, and never was within the United States.

"And it is further agreed that this land is not and never has been used for mining coal, lead, zinc, and that it does not come within the exceptions in the alien land law, but that it is farming or agricultural land; and that all of the parties in this action, except said Catharine Lynch, claim title through said Edward Lynch, deceased, who died in Ireland.

"It is further agreed that the parents of said Peter, Catharine and Edward Lynch were aliens and resided

and died in Ireland, never having been within the United States."

Upon the above state of facts the court found in favor of the defendant, Catharine Lynch, and the plaintiffs prosecuted error to this court.

A single question is presented for consideration, and it arises upon the statute of descents and distributions and upon the alien land act of this state. The material provisions of the first-mentioned law read as follows :

"If the intestate leave no issue, the whole of his estate shall go to his wife ; and if he leave no wife nor issue, the whole of his estate shall go to his parents.

"If one of his parents be dead, the whole of the estate shall go to the surviving parent; and if both parents be dead, it shall be disposed of in the same manner as if they, or either of them, had outlived the intestate and died in the possession and ownership of the portion thus falling to their share or to either of them, and so on through ascending ancestors and their issue." (Gen. Stat. 1897, ch. 109, §§ 19, 20 ; Gen. Stat. 1899, §§ 2459, 2460.)

The portion of the alien land law material to notice reads as follows :

"A non-resident alien, firm of aliens, or corporation incorporated under the laws of any foreign country, shall not be capable of acquiring title to or taking or holding any lands or real estate in this state by descent, devise, purchase or otherwise." (Gen. Stat. 1897, ch. 51, § 1 ; Gen. Stat. 1899, § 1194).

Under the statute first quoted, the descent of title to the lands of Peter Lynch would have been cast at his death upon his parents, irrespective of their status as aliens, had it not been for the prohibition of the statute last quoted, and, save for such last-quoted statute, upon the death of the parents, either before or after the death of their son Peter, the descent would have

been cast upon their children Catharine and Edward, and Edward having died, the descent of his share would have been cast upon his widow and children. The plaintiffs in error claim that, notwithstanding the statute last quoted, the descent of what would have been Edward's share was so cast. The defendant in error claims that it was not.

The controversy reduces itself to this question : Can a citizen inherit lands through an alien who himself possesses no inheritable quality? Perhaps some of the plaintiffs in error, although residents, cannot be classed as citizens, but if so, time is allowed by certain provisions of the alien land act for them to qualify themselves to receive the inheritance, if the person through whom they claim was capable of transmitting it. So, for the purpose of the case, they may be classed as citizens along with those who actually are such. If the parents of Peter Lynch and his brother Edward had been alive at the time of the passage of the alien land act in 1891, and if they had survived the said Peter Lynch, no question, we think, could exist as to their lack of ability to receive the descent of title in question. The act in positive terms declares that a non-resident alien shall not be capable of acquiring title to lands in this state by descent, etc. ; nor could there be in such case, we think, any question as to the lack of inheritable quality in the children and grandchildren of Edward Lynch, although residents and citizens of the state. It would have been impossible for them to receive title to real estate by descent through some one who had not himself received it, or was incapable of receiving it, in that way. (*Meier v. Lee et al.*, 106 Iowa, 303, 76 N. W. 712.)

But the parents of Peter Lynch, and also his brother Edward, through whom the plaintiffs in error claim,

died before he did, and, so far as Edward was concerned, before the enactment of the alien land law. Whether the parents died before the enactment of such law is not stated, but for the purpose of a state of facts most favorable to the plaintiffs in error we will assume that they also died before it took effect; therefore, at the respective times of the death of all of them they were capable of receiving the inheritance from Peter Lynch, and would have done so had he died before 1891. Did they receive it, under the fiction of the statute, notwithstanding the death of Peter after that year? We think not. The effect of the alien land law is not only to exclude living aliens from acquiring title to lands in this state by descent, but is also to prevent the transmission of title through them under the operation of the act concerning descents and distributions before quoted. The disqualification is not alone of the living, but it is, as it were, of the dead as well. For the purpose of the transmission of title through ascending heirs to collateral kindred, the statute of descents and distributions conceives the ancestor as living, and also conceives those who receive the title from him as likewise living. For the purpose of the transmission of title to those who under the law of natural affection should receive it, the statute itself indulges in a fiction. It presupposes the parents of the deceased to be still alive, and also presupposes those next in the line of succession to be likewise living, but the alien land act operates, however, to exclude inheritance through those who in fiction of law were living as well as through those who in fact were alive.

In cases of descent of lands from collateral relatives through common ancestors under statutes similar to ours, the question whether such descent is to be regarded as mediate or immediate, direct or indirect,

has been discussed.    This question would seem to be theoretical and metaphysical rather than practical, and its proper solution no special aid to a right conclusion upon the case we are considering.

No decisions identical in point of fact with this one have been called to our attention.    However, the case of *Meier v. Lee*, supra, is so similar to it that we regard it as satisfactory authority.    The statute of Iowa providing for the descent of lands by fiction of survivorship of ancestors, and also the statute prohibiting the descent of lands to aliens, are identical in effect, and very nearly identical in language, with ours upon the same subjects.    In the case cited it was ruled that a resident citizen, who claimed the lands of a collateral kinsman through a deceased non-resident alien, was not entitled to the inheritance.    In that case, as in this, the death of the alien occurred before the death of the intestate.

It was not shown in the statement of facts whether the death of the alien occurred before the enactment of the alien land act of that state.    Had it been shown that his death occurred before the passage of the disqualifying act, the case would be identical in point of fact with this one.    So far as the death of Edward Lynch is concerned, and also so far as the above-stated favorable assumption concerning the death of his parents is concerned, we do not regard the death of the alien before or after the enactment of the prohibitive statute as a fact of importance.    The rights of inheritors are not fixed as of date of the death of the one through whom they immediately claim, but they are fixed as of the date of the death of the intestate whose property they claim.

The question discussed is the only one involved in the record.    That must be decided as it was in the court below.    The judgment is therefore affirmed.