THE STATE OF KANSAS v. CATHERINE ELLIS *et al.*
No. 14,036.    (83 Pac. 1045.)

THE STATE OF KANSAS v. CATHERINE ELLIS *et al.*
No. 14,018.

SYLLABUS BY THE COURT.

DESCENTS AND DISTRIBUTIONS—*Realty—Resident Half-sister— Deceased Alien Parents.* Resident citizen half-sisters of a resident citizen who died intestate, leaving neither widow nor children, and whose parents both died before him while non-resident aliens, inherit immediately and directly the lands of the deceased in this state.

Error from Butler district court; GRANVILLE P. AIKMAN, judge. First opinion not officially reported. Second opinion filed December 9, 1905. Judgment affirmed.

*C. C. Coleman,* attorney-general, *Jay F. Close,* and *J. S. West,* assistant attorneys-general, and *W. M. Rees,* county attorney, for The State; *F. L. Williams,* of counsel.

*Leland & Harris,* and *Redden & Kramer,* for defendants in error; *Eugene Hagan,* as *amicus curiæ.*

## STATEMENT.

ON July 14; 1903, the plaintiffs, Catherine Ellis, Annie Gerhardt, Peter J. Gainer, and Louis A. Deutsch, filed their petition in the district court of Butler county, Kansas, alleging that they were the legal and equitable owners of certain lands in that county and entitled to immediate possession of the same, and that the defendants, E. A. Pavey, B. R. Leydig, and B. R. Leydig as administrator of the estate of John Gainer, deceased, unlawfully kept them out of such possession. The county attorney of Butler county obtained leave of the court to interplead on behalf of the state of Kansas, and filed such interplea, and, after denying all of the allegations of the petition, alleged that one John Gainer died intestate in Butler county, Kansas, on July 25, 1900, and was at the time of his death seized and possessed of the lands claimed by the plaintiffs in the action; that Gainer was a citizen of the United States, unmarried, and died without issue; that his father and mother died in Ireland, 'aliens of the United States, before the death of John Gainer; that plaintiffs Catherine Ellis and Annie Gerhardt were half-sisters, and the plaintiffs Peter Gainer and Louis A. Deutsch were nephews, of John Gainer, deceased; that the real estate in question was not and never had been used for the purpose of mining coal, lead, or zinc, and did not come within the exceptions of the alien land law, but was farming or agricultural land.

There was no allegation that any of the plaintiffs was not a citizen of the United States, or that the parents of the nephews, Peter J. Gainer and Louis A. Deutsch, were not citizens of the United States. The answer prayed that the lands be escheated to the state of Kansas. A demurrer was interposed thereto, which was sustained, and the state brings the case here for review.

The State v. Ellis.

The opinion of the court was delivered by

SMITH, J.: On consideration of the motion for a rehearing it was determined that, as the plaintiffs below had not acquired the land in question under the act known as the alien land law—that is, they had not acquired title by the foreclosure of any lien or mortgage which they owned and which existed against the land prior to the passage of the act, the ground upon which the former decision of this court was based was not involved in the case. A rehearing was therefore allowed.

We pause in sad regret to note that death has deprived the court and their respective clients of able and conscientious counsel, whose briefs upon the former hearing bespeak the great learning and skill of their lamented authors. Jay F. Close, assistant attorney-general, and Judge Redden have passed to that bar where the Great Advocate forever appears to palliate the shortcomings of His redeemed subjects from earth, and to urge a reward for every worthy thought and effort. Happily, however, as in all worthy human effort, when one drops exhausted from his post of duty another steps into his place and the work ceases not. The former associates and the added counselors, availing themselves of the work already done, with great zeal and ample research have wellnigh exhausted the store of legal learning on the important proposition involved in this case.

The question is, Can resident citizen half-sisters of a resident citizen who died intestate, leaving neither widow nor children, and whose parents both died before him while non-resident aliens, inherit immediately and directly the lands of the deceased in this state? The plaintiff in error says, "No; the land is escheat to the state." The defendants in error say, "Yes." The court below, in sustaining the demurrer to the answer of the state, said, "Yes." Affirming that ruling, this court says, "Yes."

It will, of course, be conceded that sister inherits from brother under the same conditions as brother from brother, and sisters of the half-blood as sisters of the full-blood; also that, if any of the defendants in error is a legal heir to the deceased, no part of the estate can be escheated. It is also conceded by the plaintiff in error that for about 200 years—ever since the decision by Lord Hale in *Collingwood v. Pace,* 1 Keb. 65, 1 Vent. 413—the rule there announced that brother inherits immediately and directly from brother, and not mediate through the father, has been uniformly recognized as the common-law rule.

It is also the well-recognized rule of the common law that an alien cannot inherit the lands of a deceased citizen. In *Collingwood v. Pace, supra,* the father and one brother of the deceased were aliens and one brother was a citizen. It was held that the alien brother could not inherit, and that the inheritance passed immediately to the citizen brother, notwithstanding the alienage of the father.

The provision of our statute as to the descent from one who dies intestate, leaving neither widow nor children, is as follows:

"If one of his parents be dead, the whole of the estate shall go to the surviving parent; and if both parents be dead, it shall be disposed of in the same manner as if they, or either of them, had outlived the intestate and died in the possession and ownership of the portion thus falling to their share, or to either of them, and so on through ascending ancestors and their issue." (Gen. Stat. 1901, § 2522.)

At the time the statute was enacted, and for many years thereafter, the constitution of Kansas provided that no distinction should ever be made between citizens and aliens in reference to the descent of property. By permitting aliens to inherit the same as citizens, this constitutional provision in that respect abrogated the common-law rule. Then, since alien and citizen stood upon equal footing as to the right of inheritance in this state, is it to be supposed that in the enactment

of the statute above cited it was the purpose of the lawmakers to abrogate the common-law rule as to inheritance from brother to brother? If not abrogated by the statute it will be conceded that this common-law rule is a part of the law of this state. If the language of the statute unequivocally prescribes another and inconsistent rule, we must apply the statutory rule regardless of consequences, and leave it to the legislature, in its discretion, to make good any injustice that may result.

What, then, is the meaning of the portion of the statute of descents quoted above? Does it simply furnish a guide to determine who are the heirs of a deceased that dies intestate, leaving no widow or children? Or does his estate become immediately a part of the estate of his last surviving parent, or one-half go to the estate of each, regardless of which was the last survivor? Upon his death is his estate liable for the debts of either or both of his deceased parents, or may it pass to strangers under the will of one or both? If his father had children by a former wife and died before his mother, who had no other child, but who was again married and died before him, leaving only a widower, does his estate go to this widower in exclusion of his half-brothers and sisters by his father's first marriage? These and many other questions arise under the construction we are asked by the state to adopt. We only mention these to show how indefinite is the suggested meaning in comparison with the remainder of the statute of descents, which is quite plain and specific.

The first sentence of section 2522 of the General Statutes of 1901 provides that, "if one parent be dead, the whole of the estate shall go to the surviving parent." Then follows the portion of the section under consideration, which provides that, if both parents be dead, the estate "shall be disposed of in the same manner as if they, or either of them, had outlived the in-

19—72 KAN.

testate and died in the possession" thereof. Since "the dead can neither inherit nor transmit anything," this seems to have been adopted as the shortest and most definite manner of designating who, under the circumstances, would be the heirs of the deceased intestate. If the parents of the intestate had been living and had died in the possession of his estate, under the constitution as it was when the statute of descents was enacted the land would have gone to their surviving children and to the children of their deceased children —that is, to his brothers and sisters surviving, and to the children of those brothers and sisters who may have died before him, and, if there were none of these, then to his grandparents, if any were surviving, and, if not, to his aunts and uncles, if any were surviving. In short, almost the entire chapter of the statute would have had to be repeated to direct specifically what should be done with this estate, and the result would have been the same as follows from the few words which were used, and identically the same as would have resulted from the application of the rule promulgated in *Collingwood v. Pace,* 1 Keb. 65, 1 Vent. 413. "Things which are equal to the same thing are equal to each other."

For twenty years or more the common-law rule and the provision of our statute were in effect the same. How, then, shall it be said that the amendment of section 17 of the bill of rights has changed the meaning of this statute and disinherited the defendants in error? There is no possible conflict between the amended section and the statute. The new section of the constitution authorizes the legislature to *regulate,* not to *prohibit,* the right of aliens to inherit lands. The language of itself seems to recognize a *right* in aliens to inherit lands. Shall this mild grant of power be construed to be self-executing and, *ipso facto,* to abolish the right of a certain class of citizens to inherit lands? We cannot so construe it.

It is believed that this is the first time this court

has been called upon to decide whether the rule in *Collingwood v. Pace, supra,* obtains in this state. Inheritances have been affirmed where the rule would apply, but the question has not been specifically raised or discussed. The following are some of the cases: *Smith v. Lynch,* 61 Kan. 609, 60 Pac. 329; *Sarver v. Beal,* 36 Kan. 555, 17 Pac. 743. In the latter case it was said:

"It [the property] could not pass to any deceased person or through any deceased person. It could not pass to or through the mother, for she was dead. . . . She is mentioned only for the purpose of indicating or of fixing a rule for determining to whom the property of the son directly went when he died." (Page 559.)

On the other hand this court has said that brothers do not inherit from brothers because they are brothers, but because the one who inherits is the heir of the father. (*McKinney v. Stewart,* 5 Kan. 384; *Couch v. Wright,* 20 Kan. 103; *Head v. Spier,* 66 Kan. 386, 71 Pac. 833.) Other expressions repugnant to the adoption of the rule have been used in cases where the question was not raised and was not involved. In Iowa, under a statute substantially like ours, the immediate descent of property from brother is held to obtain. (*Wilcke v. Wilcke,* 102 Iowa, 173, 71 N. W. 201; *Meier v. Lee et al.,* 106 Iowa, 303, 76 N. W. 712.)

In the very able and interesting brief of Mr. Eugene Hagan, appearing as *amicus curiæ,* it is contended that if the intestate died without heirs the probate court had jurisdiction of the estate, as provided in sections 6382, 6383 and 6384 of the General Statutes of 1901; that the state in no event could acquire title to the land in question, and could only acquire title to the proceeds thereof after holding the same for twenty-one years, subject to the right of any person to appear and prove heirship; that the right of aliens to inherit lands is recognized by the amended section 17 of the bill of rights, and that the plaintiffs below, upon the

death of Gainer, took at least a defeasible estate in his lands; that their rights could only be forfeited by the decree of a court of competent jurisdiction, and no such decree had been made after intestate's death and prior to August 6, 1900, when a treaty between the United States and Great Britain was proclaimed, and became a part of the law of the land, which gave the defendants in error three years, and under some circumstances longer, to dispose of these lands. These defendants in error, however, are not subjects of Great Britain, but are citizens of the United States. This treaty therefore does not apply.

It might be interesting to discuss other questions raised in this and other briefs, but it is regarded as unnecessary. With every section of the constitutional and statutory law of Kansas enacted since the birth of the state granting to aliens rights and privileges in the most generous spirit possible, we cannot separate a portion of one section of the statute from the mass of these beneficent provisions and so construe it as to disinherit citizens of the United States and of Kansas on the sole ground that their parents were aliens; especially when a construction which preserves their rights is equally open to us.

The order and judgment of the district court are affirmed.

All the Justices concurring.