J. B. CRAMER, *Appellee*, v. JAMES R. MCCANN *et al.,*
*Appellants.*

No. 16,786.

SYLLABUS BY THE COURT.

1. DESCENTS AND DISTRIBUTIONS—*Cousins.* Cousins do not in-
herit immediately from each other, but only mediately, through
the parents of each, and children can not inherit immediately
from a cousin of their parent.

2. ——— *Heirs of Aliens.* Under the provisions of the alien
land act (Laws 1891, ch. 3) resident citizens of the United
States could not inherit lands in this state through the opera-
tion of the statute of descents and distributions when they
must trace their descent through a cousin of their parent, who
was an alien at the time of his death.

3. QUIETING TITLE—*Possession by Plaintiff—Title of Defendant.*
In an appeal from a judgment quieting title to lands, where
there was sufficient evidence to sustain a judgment in favor
of the plaintiff finding that when the action was brought he
was in the peaceable, quiet possession of the real estate, claim-
ing title, the first inquiry must necessarily be as to what title
the defendant has; for, of he have no title, he can not question
that of the plaintiff.

4. ——— *Same.* The evidence in this case examined and held
to be sufficient to warrant a finding that when the action was
brought the plaintiff was in the peaceable, quiet possession of
the real estate, claiming title, and, it appearing that the
defendants never acquired any title themselves, the judgment
is affirmed.

Appeal from Barber district court. Opinion filed
January 7, 1911. Affirmed.

*Samuel Griffin,* for the appellants; *Eldon M. Votaw,*
and *Harris F. Williams,* of counsel.

*A. L. Noble,* and *J. N. Tincher,* for the appellee.

*A. A. Godard,* and *H. E. Valentine,* as *amici curiæ.*

The opinion of the court was delivered by

PORTER, J.: The appellee brought this action to quiet his title to certain real estate in the city of Kiowa, of which he was in possession and to which he claimed title by a conveyance from the heirs at law and next of kin of Kate Craven, who died intestate April 30, 1900, while seized of the title. At the time of her death Mrs. Craven was a widow and left no parent or children or descendants of children living. Her next of kin were brothers and sisters and descendants of brothers and sisters, all of whom were nonresident aliens living in Ireland. The common ancestor of Mrs. Craven and the appellants was her grandfather and their great-grandfather, who lived and died a nonresident alien, as did also his two sons, the father of Mrs. Craven and the grandfather of the appellants respectively. Richard St. Lawrence, father of three of the appellants, was a cousin of Mrs. Craven. He was born in Ireland and came to the United States in 1862, and at the time of his death, which preceded that of Mrs. Craven, he was a resident and citizen of this country. He had four children, Patrick R. St. Lawrence, Mary A. Doherty, James J. St. Lawrence and Richard T. St. Lawrence. These children are all living, and reside in Chicago, Ill. They were all citizens of the United States at the time of the death of Mrs. Craven. One of them, Richard T. St. Lawrence, has conveyed any interest he has in the real estate in controversy to James R. McCann, who is the other appellant.

In June, 1900, after Mrs. Craven's death, James J. St. Lawrence, one of the appellants, who is a lawyer residing in Chicago, procured from the next of kin in Ireland, who are the same persons through whom the appellee claims, a power of attorney as "next of kin and heir at law of Kate Craven, deceased," which gave him full power and authority to represent them as their

attorney in fact as to the real and personal property of the deceased.

On October 16, 1900, Mr. St. Lawrence went to Kiowa and took possession of the real estate in controversy, which consists of a hotel and a number of lots appurtenant thereto. He had the property insured in his name, as "attorney for the heirs of Kate Craven, deceased." His power of attorney was filed for record in Barber county, August 4, 1902. On his first visit to Kiowa he was there several weeks. Before leaving for his home he found a tenant for the hotel, and arranged with an agent in Kiowa to collect the rents. This agent collected the rents and remitted the same to him until sometime in June, 1906, when he declined to have anything more to do with procuring tenants or looking after the property, but agreed to continue to remit to Mr. St. Lawrence the rents which were afterward collected by J. B. Cramer & Co., real-estate agents. This firm, of which the appellee was a member, acted as the agents of Mr. St. Lawrence in procuring tenants. They collected rents, charged a commission, and paid the balance to the former agent at Kiowa, who remitted to Mr. St. Lawrence. This arrangement continued until July 1, 1907.

In April, 1907, the alien next of kin living in Ireland executed a new power of attorney to John W. Ellis, of Chicago, Ill., in which they revoked the former power of attorney executed to James J. St. Lawrence, and authorized John W. Ellis to represent them in all matters connected with the estate of Kate Craven, deceased, and to sell and convey by warranty deed all their right, title and interest in the real estate. On April 22, 1907, John W. Ellis, acting under his power of attorney, notified the local agent at Kiowa who had been remitting rents to James J. St. Lawrence that he represented the next of kin and heirs of Kate Craven, and procured from the agent a statement in writing

46—83 KAN.

recognizing him as the lawful agent of the heirs. On May 7, 1907, John W. Ellis, as attorney in fact for the Irish heirs, sold and conveyed the real estate in question to Harry A. Lewis, of Cook county, Illinois, and, on July 1, 1907, Lewis conveyed the same by warranty deed to J. B. Cramer. From that date Cramer retained the rents. The same tenant continued to occupy the hotel. Afterward, on September 5, 1907, Cramer brought this action to quiet his title.

The appellants filed their answer and cross-petition, each claiming to own an undivided one-fourth interest in the property in controversy. It was alleged that the appellants were all resident citizens of Chicago, Ill., at the time of the death of Kate Craven, and that the persons through whom the appellee claims were not her true and lawful heirs. The answer and cross-petition further expressly denied that J. B. Cramer was in the possession of the real estate when the action was commenced, and alleged that whatever possession he held was obtained by fraud and collusion, and without their knowledge, and that in truth and in fact his possession was theirs, inasmuch as he had secured the same while acting as their agent for the purpose of collecting the rents. They asked for affirmative relief quieting their title as against him.

Issues were joined and the cause tried to the court. The court found for the plaintiff and rendered judgment quieting and confirming his title to the real estate as against the appellants. This is the judgment which is sought to be reversed.

The controversy is between the appellee, who is the grantee of the Irish heirs of Kate Craven, who were her brothers and sisters and children of deceased brothers and sisters, all of whom were aliens at the time of Kate Craven's death, and the Chicago heirs, whose father was Kate Craven's cousin, and who were citizens and residents of the United States at the time of her death. The family tree showing the next of kin

COMMON PROGENITOR
John St. Lawrence
*Alien*

Two         sons

Patrick St. Lawrence
*Alien*

*One*      *son*

**Richard St. Lawrence**
Came to U. S. '62.
Citizen Chicago, Ill.,
'69

Four      children

All citizens, now | living at Chicago, | Ill.

**Patrick R**
St. Lawrence

**Mary A.**
**Doherty**

**James J.**
St. Lawrence

**Richard T.**
St. Lawrence

Conveyed to
**James R. McCann of**
Chicago
Apr. 13, 1907.

Lawrence St. Lawrence
*Alien*

Eight      children

Mary
St. Lawrence
O'Driscoll

*Alien*
Died before
Kate Craven

Two      children

Josephine
Quinn
*Alien*
Now living

Bridget
O'Driscoll
*Alien*
Now living

John
St. Lawrence

*Alien*
Died since
Kate Craven

Two      children

Bridget
McDermott
*Alien*
Now living

Mary
Becker
*Alien*
Now living

Margaret
St. Lawrence
Smart

*Alien*
Died 1907

Five      children

Lawrence
Smart
*Alien*
Now living

Ellen
Smart
Taylor
*Alien*
Now living

Bridget
Smart
Garnish
*Alien*
Now living

**Mary**
**Smart**
**Dunne**
*Citizen*
Now living

Maggie Smart
Sutherland
*Alien*
Now dead

son

William Sutherland
*Alien*
Now living

Annie
St. Lawrence
*Alien*, died
before Kate
Craven and
without issue

Lawrence
St. Lawrence,
jr.
*Alien*
Now living

Wm.
St. Lawrence
*Alien*
Now living

Ellen
St. Lawrence
McMahan
*Alien*
Now living

**Kate Craven**
Died Apr. 30,
1900,
*Citizen*
Kans.

Note: Those now living on this side of the
house gave powers of atty. to John W.
Ellis, who conveyed to his partner,
Harry A. Lewis, who in turn con-
veyed to plaintiff and appellee, J. B.
Cramer.

**ST. LAWRENCE FAMILY TREE.**

of Kate Craven, both citizens and aliens, appears in the accompanying diagram (inserted opposite page 720), the names of citizens being in bold-faced type.

As the constitution was originally adopted in 1859 section 99 thereof, which is section 17 of the bill of rights, read as follows:

"No distinction shall ever be made between citizens and aliens in reference to the purchase, enjoyment or descent of property."

In 1888 the constitution was amended and this section made to read:

"No distinction shall ever be made between citizens of the state of Kansas and the citizens of other states and territories of the United States in reference to the purchase, enjoyment or descent of property. The rights of aliens in reference to the purchase, enjoyment or descent of property may be regulated by law." (Bill of Rights, § 17.)

Pursuant to this amendment, the legislature of 1891 adopted what is known as the "alien land act," which is chapter 3 of the Laws of 1891. Kate Craven died on April 30, 1900. At that time the alien land law was in full force and effect, although it was afterward repealed. (Laws 1901, ch. 1.) The act itself is entitled "An act in regard to aliens, and to restrict their rights to acquire and hold real estate, and to provide for the disposition of the lands now owned by nonresident aliens." It has frequently been before the court, and was construed in the following cases: *Wuester v. Folin,* 60 Kan. 334; *Smith v. Lynch,* 61 Kan. 609; *Investment Co. v. Trust Co.,* 65 Kan. 50; *Madden v. The State,* 68 Kan. 658; *The State v. Ellis,* 72 Kan. 285. It is one of the contentions of the appellants that under the alien land act, as construed by these decisions, the appellee acquired no title whatever to the land in controversy by virtue of the conveyance from the Irish heirs, who were all nonresident aliens at the time of her death.

This is an action to quiet title, and the judgment in favor of the appellee is in effect a finding that when

the action was brought he was in possession of the property, claiming title. As there was evidence sufficient to sustain this judgment, the first inquiry must necessarily be with respect to the title of the appellants themselves; for, if they have no title, they can not question that of the appellee. Being in the peaceable possession of real estate, claiming the title thereof, he has such an interest therein, although his title be ever so defective, that he may maintain this action to quiet his title and possession as against the appellants, who have no title at all. (*Giltenan v. Lemert,* 13 Kan. 476; *Brenner v. Bigelow,* 8 Kan. 496; *Waller v. Julius,* 68 Kan. 314.) The appellants are children of a cousin of Kate Craven, and, in order to inherit as next of kin, they must trace their descent through their father up to their grandfather, who was always a nonresident alien. That they can not do this is settled by the doctrine in *Smith v. Lynch,* 61 Kan. 609. They do not take as brothers and sisters of Kate Craven, immediately, and therefore they acquired no title to the real estate, because they must claim through their grandfather, who by reason of his alienship could not inherit by descent. The precise question here— whether a cousin can inherit immediately from a cousin, or whether children can inherit immediately from the cousin of their parent—was not decided in *Smith v. Lynch,* supra, but the principle involved in both cases is the same. That was a case where nephews and nieces sought to inherit immediately from an uncle, without tracing the descent through their deceased alien father. It was said in the opinion:

"The effect of the alien land law is not only to exclude living aliens from acquiring title to lands in this state by descent, but is also to prevent the transmission of title through them under the operation of the act concerning descents and distributions before quoted. The disqualification is not alone of the living, but it is, as it were, of the dead as well." (61 Kan. 613.)

It was held that the effect of the alien land law was

to exclude the nephews and nieces from inheriting. One of the cases relied upon in *Smith v. Lynch,* supra, is *Meier v. Lee et al.,* 106 Iowa, 303, holding that a cousin does not inherit immediately from a cousin, but only mediately, through the parents of each. Other authorities in point are: *Jackson v. Green,* 7 Wend. (N. Y.) 333; *Lessee of Levy et al. v. M'Cartee,* 6 Pet. (31 U. S.) 102; *McGregor v. Comstock,* 3 N. Y. 408; *Wilcke v. Wilcke,* 102 Iowa, 173. (See, also, *The State v. Ellis,* 72 Kan. 285.)

There is considerable discussion in the briefs as to whether the evidence shows that Kate Craven was an alien or a citizen at the time of her death. In our view of the case, this question is not material. The grantors of the appellee had a claim of title, based on the contention that their intestate died an alien. Since none of the appellants acquired any interest in the property, they are not in a position to contest this claim, and, as said in *Investment Co. v. Trust Co.,* 65 Kan. 50, "the state is competent to care for itself and protect its own interests." (p. 54.) The state not being a party to this action, the ultimate rights of the appellee as against the state are not involved, and it becomes unnecessary to consider or determine whether or not the grantors of the appellee acquired any interest in the property. Nor is it necessary to consider a question raised by the appellee as to the constitutionality of the alien land law.

But one question remains, and it is in respect to the character of the appellee's possession. The judgment is a finding that he had peaceable, quiet possession. It is not disputed that the real-estate firm of which the appellee was a member were the agents of James J. St. Lawrence and represented him in renting the hotel property and collecting the rents. At the time St. Lawrence took possession of the real estate he held a power of attorney from the Irish heirs authorizing him to represent their interests in the property. He took

possession of the real estate under it, had the property insured in his name as agent for the heirs at law of Kate Craven, deceased, and placed his power of attorney on record. He testified at the trial that about the time the power of attorney was being executed he learned, through some correspondence with Mr. Noble, who is now one of the attorneys for the appellee, that there was some question as to whether the Irish heirs could inherit the land, on account of being aliens. He testified that from that time on it was a problem in his mind whether he represented the Irish heirs by virtue of his power of attorney or whether he represented himself and his brothers and sisters; but that at the time he first learned of this action having been brought he believed he represented the interests of his brothers and sisters, not, however, as their attorney or agent, but simply as the advisor of the family. He testified further as follows:

"I was always advisor of the family and looked after the matter in a general way, and in a manner I had possession of the real estate for them. . . . I held in common for them as well as for myself. I never accounted for one cent to my brothers and sisters and never settled with them for any rents that I received, because my expenses had to come out of the estate."

Again he testified:

"I really do not know whether I was attorney for the heirs in Great Britain, or attorney for the heirs in Chicago. That was the predicament I was in, and consequently I can not answer the question intelligently. The point is that I did not know who the heirs were."

There can be no question, under the evidence, that he was acting as the attorney for the foreign heirs, and no one else. He had a duly executed power of attorney from all of them authorizing him to represent them. He had no authority to represent his brothers and sisters. Besides, neither he nor his brothers and sisters ever had or could acquire by the laws of descent any interest in the property. The next of kin com-

petent to take by the laws of descent were the Irish heirs, unless they were prohibited from taking by virtue of the alien land law. We think the evidence warranted a finding that he took possession of the property as the attorney in fact of the Irish heirs. When they revoked his power of attorney and authorized another person to act for them his authority ceased. So far as J. B. Cramer & Co. or the appellee acted for him, they acted as the agents of his principals. The revocation of the power of attorney under which he had acted restored to the Irish heirs whatever rights in the property they possessed, including the right to the possession as against him and any agents he had appointed.

The appellants can only prevail upon their cross-petition, upon the strength of their own title, and not upon the weakness of their adversary's. Never having acquired any title to the real estate themselves, they were not entitled to affirmative relief; and, the appellee having been in the peaceable possession of the property under a claim of title when the action was brought, the judgment, so far as any rights of the appellants are concerned, is affirmed.